Joseph Dominic Mancano
Mancano Law, PLLC
353 West Lancaster Avenue
Suite 300
Wayne, PA 19087
215-399-5806
Fax: 215-399-5805
Email: jdm@mancanolaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : Criminal Action |
| Plaintiff, | : |
| | : |
| v. | : No. 24-cr-277-JMG-1 |
| | : |
| PHILIP E. McPHERSON, II, | : |
| | : |
| Defendant. | : |

**<u>MOTION TO WITHDRAW GUILTY PLEA</u>**

## TABLE OF CONTENTS

                                                                                                                                                                              **Page**

I.    INTRODUCTION .......................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ……………….....……….2

III.  ARGUMENT ……………………………………………………….……..7

     A.  MR. MCPHERSON HAS STRONG REASONS TO WITHDRAW HIS GUILTY PLEA. ......................................................................................................8

        1.  MR. MCPHERSON LACKED SUFFICIENT TIME TO FULLY UNDERSTAND THE FACTUAL BASIS FOR HIS GUILTY PLEA AND TO OBTAIN THE ADVICE OF COUNSEL TO MAKE A KNOWING, VOLUNTARY AND INTELLIGENT PLEA. ……………...…………….....8

     B.  MR. MCPHERSON ASSERTS HIS INNOCENCE. ………………………..12

     C.  THERE IS NO PREJUDICE TO THE GOVERNMENT. ……………..……15

IV.  CONCLUSION ........................................................................................... 16

I.      **INTRODUCTION**

On October 14, 2025, Philip E. McPherson, II, pleaded guilty to Counts Two through Forty-Four of the Second Superseding Indictment. He has not been sentenced. He now seeks to withdraw his guilty plea.

Federal Rule of Criminal Procedure 11(d)(2)(B) allows Mr. McPherson to withdraw his plea prior to sentencing if he can show a "fair and just reason" for requesting the withdrawal. Moreover, the Third Circuit has stated that such pre-sentencing motions are to be liberally construed in favor of the accused.

Mr. McPherson can show compelling reasons for moving to withdraw his plea. Indeed, the record demonstrates that he expressed misgivings about pleading guilty before, during and immediately after his plea hearing. He pleaded in haste, under pressure and without sufficient time to consult with his lawyer about the plea agreement, the factual basis for the plea and all of the relevant sentencing factors. Also, despite the complexity of case, and the fact that he was indicted three times in eight months in materially different charging documents, an aggressive schedule was set for the case which did not allow sufficient time to fully develop his defenses.[1]

Mr. McPherson's plea colloquy contains several red flags which point to a plea that is not voluntary, knowing and intelligent. He first answered "No" when the Court asked if he was pleading guilty because he *was* guilty. He was never asked whether he understood the 18 U.S.C. §3553(a) factors or whether his counsel had explained them to him. Most significantly, he never

---

[1] It is alarming that Mr. McPherson's prior counsel did not move to amend the Court's Scheduling Order when the Second Superseding Indictment was retained. As discussed *infra*, that indictment represented a sea change in the prosecution's theory regarding Count Three, the involuntary manslaughter charge.

saw the Government's Change of Plea Memorandum before the hearing and only had fifteen minutes to review the highly detailed 12-page factual basis while in Court during a recess.

Furthermore, the exceedingly short timeline from Mr. McPherson's receipt of the Guilty Plea Agreement to his change of plea hearing strongly suggests a plea that was tendered in haste. Those circumstances are exacerbated by the fact that his counsel was out of town and unavailable to consult with him.

Mr. McPherson also asserts his innocence buttressed by facts in the record. An official report of the airplane accident undercuts the Government's theory that he operated the plane in a grossly negligent manner. Additionally, his co-defendant, now a cooperator, made multiple statements that support Mr. McPherson's contention that he did not knowingly and willfully fly without certification and did not corruptly obstruct an administrative proceeding or devise a scheme to defraud.

Finally, the Government cannot show substantial prejudice resulting from the withdrawal of Mr. McPherson's plea. The Government was fully prepared to try this case on October 16, 2025, and should be able to do so later if Mr. McPherson's motion is granted.[2]

## II. FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2024, a grand jury sitting in the Eastern District of Pennsylvania returned a 41 count Indictment charging Mr. McPherson with 1 count of involuntary manslaughter, 18 U.S.C. §1112, and 40 counts of serving as an airman without a certificate, 49 U.S.C. §46306(b)(7) (ECF Document No. 1). The charges stem from an accidental September 28, 2022 plane crash in which Mr. McPherson's student pilot, K.K., died.

---

[2] The Government must show "substantial prejudice" to overcome a defendant's motion to withdraw. *United States v Ballard*, 2005 US. Dist. LEXIS 14455 at *22 (E.D. Pa. 2005), citing *Gov't of Virgin Islands v. Berry*, 631 F.2. 214, 223 (3d Cir. 1980).

Six months later, on February 13, 2025, the grand jury returned a Superseding Indictment that made significant and material changes to the original indictment. This Superseding Indictment added a defendant, Nouman Saleem, a general conspiracy charge, 18 U.S.C. §371, a conspiracy to commit wire fraud, 18 U.S.C. 1349, and one count of obstructing an administrative proceeding, 18 U.S.C. §1505 (ECF Document No. 29).

Approximately two months later, on April 25, 2025, the grand jury returned a Second Superseding Indictment which again materially altered the pending charges (ECF Document No. 48). Specifically, the Second Superseding Indictment, for the first time in Count Three, alleged that Mr. McPherson operated the aircraft in a grossly negligent manner in multiple respects (ECF Document No. 48 at 23).

Before the Second Superseding Indictment was returned, the Court issued a Second Amended Scheduling Order setting a pretrial motion filing deadline of August 4, 2025, a final pretrial conference on October 8, 2025, and jury selection on October 17, 2025 (ECF Document No. 45). The only change to this schedule after the Second Superseding Indictment was returned occurred on October 9, 2025 when the Court moved jury selection up one day to October 16, 2025 (ECF Document No. 114).

On October 8, 2025, a final pretrial conference was held. After the conference, a meeting took place with Mr. McPherson, his attorney, Angelo Cameron, and the prosecutors. During this meeting, the prosecutors orally offered Mr. McPherson a potential plea agreement whereby the Government would dismiss one conspiracy count in exchange for Mr. McPherson's guilty plea to all of the remaining counts in the Second Superseding Indictment. Mr. McPherson's counsel said very little during the meeting except to express the opinion "It's a good deal." The prosecutors did most of the talking during the meeting. Mr. McPherson and his counsel did not have any private

conversations at the time regarding the proposed guilty plea agreement (Declaration of Philip E. McPherson attached as Exhibit "A").

On October 9, 2025 at about 3:00 pm, Mr. McPherson received via email from Mr. Cameron the Guilty Plea Agreement which had been prepared by the Government. Mr. Cameron stated in the email that the Agreement had to be signed by close of business that day (*see,* Exhibit "A"). On October 10, 2025, Mr. Cameron advised the Government that Mr. McPherson had signed the Guilty Plea Agreement, but Mr. Cameron had not, as he was traveling out of town to a CLE. (*See*, October 10, 2025 email from Robert Schopf attached as Exhibit "B.") Because he was traveling, Mr. Cameron did not meet with Mr. McPherson to discuss the Guilty Plea Agreement before Mr. McPherson signed it. In fact, Mr. Cameron never met privately with Mr. McPherson to discuss the details of his Guilty Plea Agreement. (*See*, Exhibit "A.")

Almost immediately after signing the Guilty Plea Agreement, Mr. McPherson experienced misgivings. He was dissatisfied with his legal representation and lacked confidence in Mr. Cameron's ability to zealously advocate for him. (*See*, Exhibit "A.") He contacted attorney Mariana Rossman who wrote the Court communicating Mr. McPherson's concerns. (*See*, Mariana Rossman letter dated October 10, 2025, attached as Exhibit "C.") Due to the imminent change of plea hearing and trial, Ms. Rossman sought more time to enter her appearance and advise Mr. McPherson on whether to plead guilty or proceed to trial. *Id*. In its response to Ms. Rossman, the Court stated that it was up to Mr. McPherson and Ms. Rossman to decide whether she should enter her appearance, but that the parties were scheduled to be in Court the following week for a change of plea or trial. (*See*, October 10, 2025, email from Chambers attached as Exhibit "D.") Ms. Rossman never entered her appearance as Mr. McPherson lacked the funds necessary to engage new counsel. (*See,* Exhibit "A.")

In response to the Government's October 10 email, the Court scheduled a change of plea hearing for Tuesday, October 14, 2025, as Monday, October 13 was a federal holiday. On October 13, 2025, the Government sent a Change of Plea Memorandum to the Court and Mr. Cameron. *(See*, October 13, 2025 email from Robert Schopf attached as Exhibit "E.") The Change of Plea Memorandum was never sent to Mr. McPherson or shown to him before the October 14, 2025 hearing (Exhibit "A").

On October 14, 2025, the change of plea hearing was scheduled for 1:30 P.M. Barring Mr. McPherson's change of plea, a jury trial was scheduled to begin two days later, October 16, 2025. The change of plea hearing proceeded as scheduled. Early in the plea colloquy, after the Court gave a brief summary of the charges, Mr. McPherson had questions for his attorney (Transcript of Change of Plea Hearing ("Tr.") at 10-11). Shortly thereafter, the Court had the following exchange with Mr. McPherson:

> THE COURT: Do you seek to plead guilty here today of your own free will, sir, because you are guilty?
>
> THE DEFENDANT: No.

Tr. 18-19.  Following further colloquy, Mr. McPherson changed his response.

Later in the plea colloquy, the court asked Mr. McPherson whether he understood that the Court must consider at sentencing certain factors set forth in sentencing law (18 U.S.C. §3553(a)). However, the Court never asked, nor did Mr. McPherson testify, that his attorney had explained those factors to him or that he understood them (Tr. 23-24).

As the plea colloquy continued, the Court asked the Government to state the factual basis for the plea (Tr. at 32). Rather than recite the factual basis in detail, the prosecutor elected to incorporate the Change of Plea Memorandum. *Id.* Significantly, in stating that Mr. McPherson

acted with gross negligence, the prosecutor simply deferred to the Change of Plea Memorandum for factual details (Tr. at 34).

At this point, the Court had the following exchange with Mr. McPherson regarding the Change of Plea Memorandum:

> THE COURT: And have you had an opportunity to review that?
>
> THE DEFENDANT: I don't believe so. I don't believe so.

(Tr. at 35.) The Court then took a recess at 2:21 P.M. to allow Mr. McPherson to review the Change of Plea Memorandum (Tr. at 36).

It is unclear from the transcript exactly how long the recess lasted, but a reasonable estimate would be no more than 15 minutes.[3]

During this recess, Mr. McPherson never left the courtroom. He sat at counsel table in the presence of the prosecutor. He did not meet with his attorney privately to go over the 12-page, highly detailed factual exposition contained in the Change of Plea Memorandum.[4] Mr. McPherson merely skimmed the Change of Plea Memorandum and quickly noted a few glaring factual errors.[5] He did not have sufficient time to carefully review the Change of Plea Memorandum privately with his attorney and thoroughly process its contents. (*See*, Exhibit "A.")

Immediately after he changed his plea, Mr. McPherson regretted his decision. He did not believe that he was guilty but felt pressured to follow through with the guilty plea because he believed that his attorney was unprepared for trial and that there was no alternative under the

---

[3] Following the recess, there are 16 pages of colloquy in the transcript. The hearing concluded at 3:11 P.M., 50 minutes after the recess was taken.
[4] *See*, ECF Document No. 119 at 5-16.
[5] *See*, e.g., Tr. at 38-39. Had Mr. McPherson been given the opportunity to review the factual statement in detail and in advance of the hearing, he would have never accepted it. *See*, Exhibit "A."

circumstances. He fired Angelo Cameron and set about trying to raise funds to hire new counsel. (*See*, Exhibit "A.") On November 20, 2025, undersigned counsel entered his appearance in Mr. McPherson's case. Shortly thereafter, on December 1, 2025, undersigned counsel sent a joint status report to the Court advising that he was engaged to evaluate the viability of a motion to withdraw Mr. McPherson's guilty plea. On December 31, 2025, counsel wrote the Court and the Government advising that the instant Motion would be filed.

**III.     ARGUMENT**

Federal Rule of Criminal Procedure 11(d)(2)(B) states that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if: (B) the defendant can show a fair and just reason for requiring the withdrawal." Although there is no absolute right to withdraw a guilty plea, a motion to withdraw a guilty plea before imposition of sentence should be liberally construed. Indeed, the Third Circuit stated:

> "In considering the circumstances under which withdrawal of a guilty plea before imposition of sentence should be permitted, we have stated that motions to withdraw guilty pleas made before sentencing should be liberally construed in favor of the accused and should be granted freely."

*Gov't of Virgin Islands v. Berry*, 631 F.2d 214, 219, 17 V.I. 623 (3d Cir. 1980) (citations omitted).

The defendant bears the burden in demonstrating a fair and just reason to withdraw his plea. *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003). The Third Circuit has listed three factors to be considered in determining whether to grant a motion to withdraw a guilty plea: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Jones*, 336 F.3d at 252 (citations omitted).

### A. Mr. McPherson Has Strong Reasons to Withdraw His Guilty Plea.

The record here demonstrates that Mr. McPherson had serious reservations about pleading guilty which he expressed before, during and promptly after his change of plea hearing. On October 10, 2025, a few days before his guilty plea, he contacted attorney Mariana Rossman who wrote the Court expressing Mr. McPherson's concerns about the legal advice he received, and seeking to delay the plea hearing. (*See*, Exhibit "C.") At the beginning of his plea colloquy, Mr. McPherson answered "No" when the Court asked whether he was pleading guilty because he was guilty (Tr. at 18-19). Following the October 14, 2025 change of plea on November 20, 2025, undersigned counsel was engaged and entered his appearance to undertake due diligence directed toward preparing the instant Motion. Mr. McPherson acted swiftly to withdraw his plea, as a mere ninety days have elapsed between the filing of this Motion and the change of plea.[6]

Courts look more favorably on a defendant's motion to withdraw his guilty plea when such a motion is made shortly after the entry of the plea. *United States v. Ciorletti*, 1992 U.S. Dist. Lexis 12159, at *2 (E.D. Pa. 1992) citing *United States v. Roberts*, 570 F.2d 999, 1008 (D.C. Cir. 1977); *United States v. Barker*, 514 F.2d 208, 222 (D.C. Cir. 1974) ("swift change of heart" suggests that guilty plea was entered "in haste and confusion"), cert. denied, 421. U.S. 1013 (1975).

### 1. Mr. McPherson lacked sufficient time to fully understand the factual basis for his guilty plea and to obtain the advice of counsel to make a knowing, voluntary and intelligent plea.

Despite the factual and legal complexities of Mr. McPherson's case, it moved rapidly from initial charges to guilty plea. The initial 11-page Indictment was returned on August 1,

---

[6] On December 1, 2025, undersigned counsel sent the Court a joint status report advising that a motion to withdraw McPherson's guilty plea may be filed.

2024 and charged only Mr. McPherson with one count of involuntary manslaughter and forty counts of serving as an airman without a certificate (ECF Document No. 1). Six months later, on February 13, 2025, that indictment was superseded with a materially changed 28-page document that added a defendant, Nouman Saleem, and a host of additional charges including conspiracy to commit offenses against the United States, conspiracy to commit wire fraud and obstruction of an administrative proceeding. (*See*, ECF Document No. 29.) About two months later, on April 25, 2025, a Second Superseding Indictment was returned which dramatically changed the involuntary manslaughter charge (Count Three). The new Count Three reflected a sea change in the prosecution theory by detailing for the first time numerous allegations regarding Mr. McPherson's alleged grossly negligent operation of the aircraft on the day of the crash. (*See*, ECF Documents No. 48 at 23.) Thus, within eight months, Mr. McPherson was charged in three indictments, each one significantly different from the previous one.

On March 10, 2025, before the Second Superseding Indictment was returned, the Court issued a Scheduling Order setting deadlines in the case. (*See*, ECF Document No. 45.) Among other dates, the Court scheduled a final pretrial conference for October 8, 2025 and jury selection for October 17, 2025. *Id.* On October 9, 2025, jury selection was moved up to October 16, 2025 (ECF Document No. 114). No other changes were made to the March 10 Scheduling Order.

On October 8, 2025, the final pretrial conference proceeded as scheduled. Following the conference, a meeting was held among Mr. McPherson, his counsel, Mr. Cameron and the prosecutors. At this meeting, the prosecutors stated that they would offer Mr. McPherson a guilty plea agreement. The agreement would propose to drop a single conspiracy charge (18 U.S.C. §371) in exchange for Mr. McPherson's guilty plea to all of the remaining counts.

Mr. McPherson did not meet with Mr. Cameron privately to discuss the plea offer. In fact, Mr. Cameon said little during the meeting except "It's a good deal." (*See*, Exhibit "A.")

At about 3:00 PM on October 9, 2025, Mr. McPherson received a copy of the Guilty Plea Agreement (ECF Document No. 120) via email from Mr. Cameron. Mr. McPherson did not meet with Mr. Cameron who was traveling out of town to a CLE. (*See*, Exhibits "A" and "B.") Mr. McPherson signed the Agreement. Mr. Cameron did not. *Id.*

Mr. McPherson immediately regretted signing the Guilty Plea Agreement. He had serious concerns about the quality of Mr. Cameron's legal representation. He contacted attorney Mariana Rossman, who wrote the Court on October 10, 2025, seeking a continuance of the October 14 change of plea hearing (*see*, Exhibit "C"). Due to a lack of funds to engage new counsel and feeling pressure to go through with the guilty plea, Mr. McPherson did not hire Ms. Rossman (*see*, Exhibit "A.")

On October 13, 2025, the Government emailed Mr. Cameron its Change of Plea Memorandum (*see*, Exhibit "E"). The Change of Plea Memorandum was not sent or given to Mr. McPherson at the time. Moreover, Mr. McPherson did not meet with Mr. Cameron at all between October 10 and October 14, 2025. (*See*, Exhibit "A.")

On October 14, 2025, Mr. McPherson felt that he had no alternative but to proceed with a guilty plea. Although he was dissatisfied with Mr. Cameron, he could not hire another lawyer. He also did not believe that Mr. Cameron was prepared to go to trial. Being completely new to the criminal justice system, he did not believe that he could voice his concerns on his own behalf. Against his better judgment, he chose the path of least resistance and proceeded with the change of plea. (*See,* Exhibit "A.")

The circumstances of Mr. McPherson's case demonstrate that he arrived at the change of plea hearing without sufficient time to consult with his counsel regarding his guilty plea. Mr. McPherson's case involves a complicated, and in some respects contradictory, regulatory scheme and its interplay with criminal statutes. Over the span of eight months, the charges evolved and the prosecution theory changed. A Scheduling Order was issued that allowed Mr. McPherson insufficient time to prepare defenses to such serious complex charges. His attorney never sat down with him and explained the Guilty Plea Agreement in detail before the change of plea hearing (Exhibit "A.") He never saw the Change of Plea Memorandum before the hearing and had no opportunity to discuss it with his counsel. (*See*, Exhibit "A"; Tr. at 34-35.)   Mr. McPherson was relegated to reviewing a 12-page, highly detailed factual basis in 15 minutes in open court before pleading guilty (Tr. at 36)[7]. He simply could not properly read and fully process the factual basis in such a short time. Mr. McPherson needed to meet privately with counsel to discuss the Change of Plea Memorandum without a judge and prosecutor waiting to resume the hearing.

The plea colloquy also reveals that Mr. McPherson had doubts and was confused. Right after the Court summarized the charges, Mr. McPherson needed to consult with counsel (Tr. at 10-11). Later on, when asked if he was pleading guilty because he was guilty, Mr. McPherson responded "No" (Tr. at 18-19.).

A significant omission from the plea colloquy is that Mr. McPherson was never asked if he understood the 18 U.S.C.§3553(a) factors or whether his attorney discussed those factors

---

[7] When Mr. McPherson stated that he had not seen the Change of Plea Memorandum before the hearing, the proper response would have been to continue the hearing.

-11-

with him. The Court merely asked whether Mr. McPherson understood that the Court must consider the section 3553(a) factors at sentencing (Tr. at 23-24).

The circumstances leading up to Mr. McPherson's change of plea and the transcript of the plea hearing establish that his guilty plea was rushed, and not knowing and intelligent. His reasons for seeking to withdraw his plea are strong. While his responses at the plea colloquy may, on the surface, belie his current claims, he gave those responses under extreme pressure and believing he had no alternative but to respond the way he did. (*See*, Exhibit "A.")

### B. Mr. McPherson Asserts His Innocence.

Mr. McPherson contends that he is not guilty of the crimes charged. "An assertion of innocence by the defendant weighs heavily in favor of granting a plea withdrawal motion if the assertion is credible." *Ciorletti*, 1992 U.S. Dist. LEXIS' 12159 at *3 (citations omitted). "Assertions of innocence must be buttressed by facts in the record that support a claimed defense." *United States v. Mondelice*, 2016 U.S. Dist. LEXIS, 168119 at *4 (M.D. Pa. 2016) (motion to withdraw guilty plea granted where Court found defendant's assertion of innocence persuasive) (citations omitted).

Significantly, at the plea hearing when he was first asked if he was pleading guilty because he was guilty, Mr. McPherson answered "No" (Tr. 18-19). This answer was consistent with Mr. McPherson's firmly-held belief that he has viable defenses to the charges based on the record.

To begin with, there are facts in the record that contradict the allegations in Count Three of the Second Superseding Indictment that McPherson operated the aircraft in a grossly negligent manner. The Court is already familiar with an Aviation Investigation Final Report issued by the National Transportation Safety Board ("NTSB") regarding its analysis of the

September 28, 2022 airplane accident. The NTSB is an independent federal agency that investigates all civil aviation accidents in the United States. The NTSB has determined the probable cause of the accident to be "[a] partial loss of engine power for undetermined reasons." *See*, Aviation Investigation Final Report at p. 2 attached as Exhibit "F." (*See*, ECF Document No. 40.) There is no mention in the NTSB report of pilot error or gross negligence by Mr. McPherson. Moreover, this Court has already ruled that the NTSB report is admissible in evidence at Mr. McPherson's trial (ECF Document No. 112).

The NTSB's conclusion is bolstered by other facts, including a statement from Austin Lessard to Harry Soudas of the FAA which Lessard gave on November 2, 2022. (*See*, Austin Lessard statement attached as Exhibit "G.") Lessard provided a detailed chronology of events and his observations from a flight he took on September 24, 2022, four days before the fatal accident, in the same airplane that was involved in Mr. McPherson's crash. Mr. Lessard notes that on takeoff, he noticed that the aircraft was accelerating too slowly. When he was halfway down the runway, Mr. Lessard "lost confidence" in the airplane's rate of acceleration and "killed the throttle and applied brakes." *Id.* at 1. Mr. Lessard goes on to describe continued serious problems with the aircraft during the flight and landing. *Id.* at 2-3. Mr. Lessard opined that the problems with the aircraft were such that they could not be repaired and the plane properly inspected by September 28, 2022. He further opined that Mr. McPherson likely didn't know about the aircraft's malfunction when he flew it on September 28. *Id.* at 3-4. Mr. Lessard further described Mr. McPherson as "a very safe and up-to-and-above-standard pilot." *Id.* at 3.

The NTSB report and the Lessard statement clearly provide a defense to the involuntary manslaughter charge.[8] There are other facts in the record that also support Mr. McPherson's defense to the involuntary manslaughter charge, although those facts will not be detailed here.

As to Counts One, Two, Four and Five through Forty-Four, each one depends upon what occurred at an October 7, 2021 meeting between Mr. McPherson, Nouman Saleem and an FAA Aviation Safety Inspector ("ASI") at Proflite, Mr. Saleem's flight school. The record reveals that at that time Mr. McPherson voluntarily deposited his pilot's certificate with the ASI and was issued a Temporary Airman Certificate. Mr. Nouman Saleem witnessed the transaction. Mr. McPherson contends that the ASI told him that although he could not fly passengers, he could continue to instruct students. (*See*, Exhibit "A.") This advice was corroborated by Nouman Saleem in multiple text messages to his wife and attorney. One such text message from Mr. Saleem
to his attorney reads:

> "Look at the date.
> Everything coincides with what the FAA official told me and Phil.
> He told me he cannot fly the passengers but could instruct. I even offered to send another pilot to fly another student for their check ride."

(*See*, text message from Nouman Saleem to Eric Gibson, Esq., attached as Exhibit "H.") A text message from Nouman Saleem to his wife "Kiba" attributes the same statements to the FAA official. (*See*, August 19, 2024 text message attached as Exhibit "I.")

---

[8] Surprisingly, Mr. McPherson's prior counsel never obtained an expert to opine on the issue of gross negligence in the operation of the aircraft. Such a failure may constitute ineffective assistance of counsel.

Further, text messages from Mr. Saleem to his wife describe how the Government won't accept his truthful information, but is "bullying" him to lie to protect the FAA. *See,* various text messages attached as Exhibit "J." Mr. Saleem is now a cooperator with an incentive to lie. He has apparently changed his story to save himself. However, a jury may choose to believe the earlier statements he made to his attorney and wife when he was not bullied to lie. In addition, it is expected that other evidence in the case will corroborate Mr. McPherson's version of the October 7, 2021 meeting.[9]

If a jury believes Mr. McPherson's version of the October 7, 2021 meeting, it could conclude that he lacked the mens rea required to convict him on Count Two (intent to defraud), Count Four (corruptly) and Counts Five through Forty-Four (knowingly and willfully). At worst, the jury could conclude that he acted with a mistaken belief that he was permitted to continue to instruct students.

**C.  There is No Prejudice to the Government.**

The Government was completely prepared to try this case on October 16, 2025. It is the Government's burden to show that it will be substantially prejudiced by Mr. McPherson's withdrawal of his guilty plea. *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001). Since it was prepared to try Mr. McPherson three months ago, there is no reason to believe that the Government would suffer prejudice by a withdrawal.

---

[9] In multiple texts to his wife, Mr. Saleem boasts that he has a videotape of the October 7, 2021 meeting. That videotape was never produced to the defense, and the Government claims it does not exist. If Mr. McPherson's Motion is granted, new counsel will move for discovery of the videotape, and if it was destroyed will seek information regarding the circumstances surrounding its destruction.

IV. **CONCLUSION**

Mr. McPherson has stated strong reasons to withdraw his guilty plea and has credibly asserted his innocence. Further, the Government will suffer no prejudice by a withdrawal. Accordingly, Mr. McPherson's Motion to Withdraw Guilty Plea should be granted.

Respectfully Submitted,

DATED: January 16, 2026 　　　　　 */s/ Joseph D. Mancano*
　　　　　　　　　　　　　　　　　　Joseph D. Mancano, PBA No. 30281
　　　　　　　　　　　　　　　　　　Mancano Law, PLLC
　　　　　　　　　　　　　　　　　　353 West Lancaster Ave, Suite 300
　　　　　　　　　　　　　　　　　　Wayne, Pennsylvania 19087
　　　　　　　　　　　　　　　　　　Tele: (215) 399-5806
　　　　　　　　　　　　　　　　　　Facsimile: (215) 399-5805
　　　　　　　　　　　　　　　　　　Email: jdm@mancanolaw.com

**CERTIFICATE OF SERVICE**

I, Joseph D. Mancano, do hereby certify that the foregoing has been delivered electronically to all counsel of record in the above-captioned matter via the Court's electronic filing system.

DATED: January 16, 2026 　　　　　 */s/ Joseph D. Mancano*
　　　　　　　　　　　　　　　　　　Joseph D. Mancano, PBA No. 30281