**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **Case No. 24-cr-277** |
| **PHILIP EVERTON MCPHERSON II** | : | |

## GOVERNMENT'S RESPONSE OPPOSING THE DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA

The United States of America, by its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, Robert Schopf, Assistant United States Attorney, and Marie Miller, Special Assistant United States Attorney, for the District, hereby files its Response in Opposition to the Defendant's Motion to Withdraw his Guilty Plea. The defendant's 11th hour claims that he had insufficient time and ineffective advice to make a knowing, voluntary, and intelligent plea, and that he is now innocent of the charges, are belied by the record, and moreover are meritless. For the following reasons, the defendant's unsupported claims must fail and his motion to withdraw his guilty plea on the eve of sentencing should be denied.

## I.    BACKGROUND

### A.    Procedural Background

Defendant Philip Everton McPherson II ("Defendant") was indicted on August 1, 2024. ECF No. 1. A superseding indictment was filed against him on February 13, 2025, ECF No. 29, and a second superseding indictment ("SSI") was filed on April 25, 2025. ECF No. 48. The SSI contains 44 counts, charging McPherson with numerous offenses related to his unlawful operation of an aircraft without a valid pilot's certificate. *Id*. In consultation with defense counsel, the Court listed the case for trial on October 17, 2025.

On October 8, 2025, following a final pretrial conference before this Court, the defendant, through Attorney Cameron, notified the government that he would like to meet with the prosecutors and the case agent. During this meeting, the defendant admitted that he was guilty and requested the Government prepare an agreement reflecting his desire to plead guilty to all but one count of the SSI (see Exhibits 3, 4, and ECF Nos. 116-121). The defendant requested that Count One of the Superseding Indictment – Conspiracy to Defraud the United States not be included in his guilty plea because he didn't want to be labeled "a liar." After the government agreed to seek approval for a plea agreement to that effect, in the following hours the defendant, through counsel also made requests to dismiss Conspiracy to Commit Wire Fraud and Obstruction of an Administrative Proceeding. These requests were denied. Notably, during these discussions, the defendant did not raise issue with the Involuntary Manslaughter charge.

Pursuant to the defendant's request and assertion that he would be pleading guilty in this case, the government prepared a written guilty plea agreement and tendered that to Attorney Cameron on October 9, 2025. The defendant signed the guilty plea agreement and provided a copy to the government. The parties informed the Court of the change and the Court scheduled the case for a Change of Plea hearing on October 14, 2025, while still keeping the case listed for trial in the event that the defendant wished to proceed in that manner.

On October 14, 2025, the defendant appeared before this Court for a Change of Plea Hearing, admitted his guilt, and entered a plea of guilty to all counts of the SSI except Count One – Conspiracy to Defraud the United States. On January 16, 2026, more than three months later, and only a week and a half prior to his scheduled sentencing, the defendant, through Attorney Joseph Mancano, filed a motion to withdraw his guilty plea. ECF No. 136. His

Motion is supported by a self-serving declaration that is contradicted by his sworn testimony in this case as well as the evidence in this case.

## II.    LEGAL ARGUMENT

Rule 11(d) of the Federal Rules of Criminal Procedure (formerly Rule 32(e)), provides that a defendant must have a "fair and just reason" for withdrawing a guilty plea before sentencing. A guilty plea is a "'grave and solemn act which is 'accepted only with care and discernment.'" *Government of Virgin Islands v. Berry*, 631 F.2d 214, 221 (3d Cir. 1980), quoting *Brady v. United States*, 397 U.S. 742, 748 (1970). See also *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Unger*, 665 F.2d 251, 254 (8th Cir. 1981) (this procedure protects the judicial system from "a potential flood of prisoners recanting their Rule 11 statements"). See also *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (withdrawal of a guilty plea "undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice"), quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *United States v. Horne*, 987 F.2d 833, 837 (D.C. Cir. 1993) ("withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice"). A defendant whose guilty plea has been accepted by the district court after the inquiry required by Rule 11 may not withdraw the plea "on a lark." *United States v. Hyde*, 520 U.S. 670, 676 (1997); *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001) (a defendant is not entitled to withdraw a guilty plea "at his whim."); *United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975) (plea is not "a mere gesture, a temporary and meaningless formality reversible at the defendant's whim.").

As these principles and policies require, the defendant bears the burden of demonstrating he has a "fair and just" reason, "and that burden is substantial." *United States v. Jones*, 336

F.3d 245, 252 (3d Cir. 2003). The defendant must explain why contradictory positions were taken under oath at the guilty plea hearing. *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992). Thus, a shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty. *Id*. If the defendant cannot meet this burden, the government does not need to show prejudice. *United States v. Martinez*, 785 F.2d 111, 116 (3d Cir. 1986); see also Jones, 336 F.3d at 255; *United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir. 1995).

Consistently with these teachings, a district court's ruling on a motion to withdraw a guilty plea is reviewed for abuse of discretion. *United States v. Martinez*, 785 F.2d 111, 113 (3d Cir. 1985). "To show an abuse of discretion, appellants must show the district court's action was 'arbitrary, fanciful or clearly unreasonable.' *Stich v. United States*, 730 F.2d 115, 118 (3d Cir. 1984). [The court of appeals] will not disturb a trial court's exercise of discretion unless 'no reasonable person would adopt the district court's view.' *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir.2000)." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002). "If reasonable [persons] could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976) (en banc).

There is no absolute right for a defendant to withdraw a plea. *United States v. Ptomey*, 366 F.2d 759, 760 (3d Cir. 1966); *United States v. Urias-Marrufo*, 744 F.3d 361, 364 (5th Cir. 2014). A motion for leave to withdraw a plea of guilty, addressed to the sound discretion of the court, *should be denied if the defendant knew and understood what was being done, and there were no circumstances demonstrating force, mistake, misapprehension, fear,*

*inadvertence, or ignorance of his rights and understanding of the consequences of his plea.*
*Ptomey*, 366 F.2d at 760 ("There is nothing to show that the advice which the attorney gave
the appellants was not entirely sound") (emphasis supplied). Courts considering a motion to
withdraw a guilty plea before sentencing should consider factors such as defendant's assertion
of innocence, defendant's delay in filing the motion, voluntariness of the plea, presence of
counsel assistance, and judicial resources.

"Once a defendant has pleaded guilty, he 'must then not only reassert innocence, but
give sufficient reasons to explain why contradictory positions were taken before the district
court and why permission should be given to withdraw the guilty plea and reclaim the right to
trial.'" *Brown*, 250 F.3d at 815. (quoting *Jones*, 979 F.2d at 318); see also *United States v.*
*Unqer*, 665 F.2d 251, 254 (8th Cir. 1981) (this procedure protects the judicial system from "a
potential flood of prisoners recanting their Rule 11 statements").

Further, a defendant must set forth reasons that are not only technically sufficient, but
also credible. In doing so, he has the burden of overcoming his own repeated sworn
admissions of guilt at his plea colloquy. "The representations of the defendant, his lawyer, and
the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting
the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn
declarations in open court carry a strong presumption of verity. The subsequent presentation
of conclusory allegations unsupported by specifics is subject to summary dismissal, as are
contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431
U.S. 63, 74 (1977) (internal citations omitted); *Hyde*, 520 U.S. at 675-79 (applying same
reasoning to motion to withdraw guilty plea). If the defendant does not demonstrate a
sufficient ground for withdrawing the plea, the government is not required to show prejudice.
*United States v. Cox*, 553 Fed.Appx. 123 (3d Cir. 2014) (unpublished) (citing to *United States*

*v. Martinez*, 785 F.2d 111, 116 (3d Cir. 1986)). Here, the defendant cannot meet his heavy burden to justify the extraordinary relief he seeks.

### a.    Defendant's "Assertion of Innocence"

A defendant's assertion of innocence must be supported by evidence. For example, in *U.S. v. Brown*, 250 F.3d 811 (3d Cir. 2001), the court held a mere assertion of innocence in the face of contradictory evidence before the court is insufficient to meet the standard to withdraw a plea. In *Brown,* the 3rd Circuit held that defendant neither argued nor presented any evidence that she did not illegally purchase firearms or conspire to do so and thus she has failed to meaningfully reassert her innocence or explain her contradictory positions taken before the District Court and accordingly the Court found no fault with the District Court's analysis. *Id.* at 818.

### b.    Prejudice to the Government

Unless and until defendant meaningfully asserts his innocence and provides a valid reason that his plea was not knowing and voluntary, the Government is not required to show prejudice. *United States v. Jones*, 336 F.3d 245, 255 (3d Cir. 2003). If the court finds that the defendant has met his burden with respect to the first two prongs of the analysis, and deems such a showing of prejudice is necessary, the Government respectfully requests the court's permission to supplement the record with that evidence.

### c.    Standard for Ineffective Assistance of Counsel Claims

Although this is not a hearing to determine whether the defendant's attorney's rendered ineffective assistance of counsel in this matter, the defendant, in contravention of his sworn testimony at his change of plea hearing, raises a *de-facto* claim of ineffectiveness leading to his purported invalid guilty plea.  To successfully develop an infective assistance of counsel claim, the defendant must show that (i) his counsel's representation fell below an objective

standard of reasonableness demanded of attorneys in criminal cases; and (ii) there is a

reasonable probability that, but for counsel's errors, he would have proceeded to trial instead

of pleading guilty. *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994)(citing *Hill v.

Lockhart*, 474 U.S. 52, 56-59 (1985)(the same two-part *Strickland* standard applicable to

ineffective-assistance claims arising out of the plea process). "[A] guilty plea cannot be

attacked as based on inadequate legal advice unless counsel was not 'a reasonably competent

attorney' and the advice was not 'within the range of competence demanded of attorneys in

criminal cases.'" *Strickland v. Washington,* 466 U.S. 668, 687 (1984)(citations omitted).

"Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. As the

Court held:

> A fair assessment of attorney performance requires that every effort be
> made to eliminate the distorting effects of hindsight, to *reconstruct the
> circumstances of counsel's challenged conduct*, and to evaluate the
> conduct from counsel's perspective at the time. Because of the difficulties
> inherent in making the evaluation, a court must indulge a strong
> presumption that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the defendant must overcome
> the presumption that, under the circumstances, the challenged action
> "might be considered sound trial strategy." … There are countless ways to
> provide effective assistance in any given case. Even the best criminal
> defense attorneys would not defend a particular client in the same way.

> *Id*. (emphasis added).

The Supreme Court also recognized that:

> Counsel's actions are usually based…on informed strategic choices made
> by the defendant and on information supplied by the defendant…what
> investigation decisions are reasonable depends critically on such
> information. For example, when the facts that support a certain potential
> line of defense are generally known to counsel because of what the
> defendant has said, the need for further investigation may be considerably
> diminished or eliminated altogether. And when a defendant has given
> counsel reason to believe that pursuing certain investigations would be
> fruitless or even harmful, counsel's failure to pursue those investigations
> may not later be challenged as unreasonable. *In short, inquiry into
> counsel's conversations with the defendant may be critical to a proper*

> *assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.*

*Id*. at 691.

"The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id*. at 695. In this case, that decision maker is the Court. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.* at 700. A careful review of the transcript of the defendant's change of plea hearing  makes it clear – there was a reasonable, conscientious, and impartial application of standards applied to change of plea hearings, and there is not one scintilla of evidence of prejudice to the defendant.

## III.     DISCUSSION

### A.     The Defendant Received Robust, Effective Legal Representation Throughout This Case

In his motion, the defendant makes several complaints about one of his attorneys - Attorney Angelo Cameron.  The defendant conveniently ignores the fact he had not one, but two counsel of record - Attorney Cameron, a graduate of Georgetown Law School with over 35 years of criminal defense experience; and Attorney Mark Dombroff, a very experienced aviation lawyer employed as a partner at Fox Rotchschild. According to his website, Attorney Dombroff began his legal career as an attorney with the Federal Aviation Administration's Office of General Counsel, before working in the aviation unit of the U.S. Department of Justice and then entering private practice in 1985.[1] Attorney Dombroff was a founder of an aviation law firm, which he led for nearly two decades, before joining Fox Rotschild in 2019.

---

[1] https://www.foxrothschild.com/mark-a-dombroff-2. Last viewed on January 23, 2026.

He lists over 30 nationally or internationally recognized aviation cases that he has been involved in.

Additionally, although not counsel of record in this case, the defendant was represented by another expert aviation lawyer in a concurrent administrative proceeding named Jackson B. Barnett. The defendant actively sought legal advice from Attorney Barnett about this matter. Lastly, the defendant sought counsel in this case from yet another very experienced state and federal criminal defense lawyer – Gregory S. Watts - with whom he had a professional and personal relationship. (Exhibits 1 and 3). Both of these attorneys provided legal advice to the defendant from the outset of the indictment up until his guilty plea.

The defendant, through his numerous counsel, received extensive discovery, hired a nationally recognized expert to testify at trial, filed extensive pretrial motions and responses, litigated those motions during a pretrial hearing (prevailing on some), identified numerous witnesses including character witnesses to testify at trial, identified exhibits for trial, and participated in a Rule 15 deposition. The parties negotiated jury instructions and voir dire questions ultimately filed with the court (ECF Nos. 108-111). During the course of representation, the defendant's many attorneys collectively had dozens of conversations with the Government about this case.

The defendant's recitation of the "facts" in his declaration are unsupported by the record. In ¶6 he states he had no private conversation with Mr. Cameron during the discussions with the Government on October 8, 2025. To the contrary, the defendant in fact, had multiple private discussions not only with Mr. Cameron on that day (see Exhibits 3 and 4), but with his other counsel Mr. Barnett and Mr. Watts. He also had discussions with Mr. Cameron and other lawyers between that day and the Change of Plea hearing on October 14, 2025. McPherson states he "felt" Mr. Cameron was unprepared to go to trial, yet this feeling is baseless. It

ignores the fact both Mr. Cameron and co-counsel Mark Dombroff appeared at the pretrial hearing, and final pretrial conference. The defendant apparently did not hear counsel strongly advocate on his behalf in response to questions from this Court exactly how they planned to introduce certain evidence and defend the charges against him at trial. Counsel was successful in filing and defending several critical motions, including a motion regarding the admissibility of the NTSB Report, and a motion regarding the admissibility of the Toxicology Report of the deceased victim. ECF No. 112. These rulings in the defendant's favor expanded the defendant's options at trial. They did not leave the defendant "unprepared" as he contends. Importantly, defense counsel was fully engaged in pretrial matters with the Government up until the defendant reversed course and indicated he wished to plead guilty immediately after the final pretrial conference. See Exhibits 3 and 4.

The defendant also alleges in his declaration in ¶14 that he was unaware of several facts regarding the operation of the aircraft that he crashed. Those facts, however, were provided to him by both the Government and his own counsel in discovery. Attorney Cameron actually made several requests for discovery to be produced, and reproduced throughout this case, so that Attorney Dombroff and the defendant could have their own copies of the discovery to review. The Government is aware that the defendant was personally reviewing the discovery he had because Attorney Cameron communicated with the government requests or clarifications that the defendant had with respect to certain items in the discovery productions.

Additionally, in ¶14 of his declaration, the defendant says he did not believe he was guilty because "On October 7, 2021, an ASI told me and Nouman Saleem that I could continue to instruct students even though I had voluntarily deposited my pilot's certificate." The defendant ignores the fact that he attended, along with Attorneys Cameron and Dombroff, a Rule 15 Deposition in this matter where the ASI in question, Arthur Brownell, testified for

several hours under oath that he explicitly told the defendant that he was not permitted to instruct flight students. He also ignores the admission of the maintenance records on the subject aircraft provided in discovery and discussed in the maintenance expert opinion. ECF Nos. 73 and 78.[2]

The defendant's feigned unawareness of the facts in this case is also belied heavily by his attendance at co-conspirator Nouman Saleem's change of plea hearing. The defendant, along with Attorney Cameron, without prompting or invitation, decided to travel from New Jersey and Philadelphia respectively to attend Saleem's change of plea. The defendant, sitting in the front row, was present to hear Mr. Saleem colloquied by this Court. Most importantly, the defendant heard the Government provide an unusually lengthy factual basis that established the elements in this case. Specifically, the Government noted that Mr. Saleem lied when he and the defendant provided sworn affidavits stating that ASI Brownell told the defendant that he could still fly an aircraft and instruct students. At the conclusion of the Government's recitation of facts, Mr. Saleem agreed with the factual basis, and entered his plea of guilty to all charges against him. Immediately following the hearing, the defendant, through Attorney Cameron, requested a transcript of the hearing. There is no question that the facts the defendant references were available to him and his counsel, reviewed by him and his counsel, discussed at numerous meetings, hearings, and the Rule 15 deposition, and refuted by additional discovery.

### B.    The Change of Plea Hearing was Fair and Just[3]

---

[2] The Government also disclosed its intent to introduce the facts that the products liability case against the engine and aircraft manufacturer was dismissed due to the plaintiff's experts' inability to find a defect in either that caused the crash.

[3] As an example of the standard of a "fair and just reason" almost being met, the record in *Nahodil* showed his attorney did not request a continuance despite Nahodil's oft repeated protestations of innocence and his considerable reluctance to plead guilty, neither of which appear in this record. Additionally Nahodil's attorney did not ask to confer with him after the court rejected his attempted plea of nolo contendere, again, inapposite the facts here. Thus, the brief record in that case did not

The transcript of the change of plea hearing strongly refutes the defendant's recently crafted arguments and declaration. Exhibit 5. Although new counsel for defendant asserts the change was "pleaded in haste, under pressure and without sufficient time to consult with his lawyer about the plea agreement, the factual basis for the plea and all of the relevant sentencing factors," the record and applicable law bely that assertion. *Id.* and ECF No. 136 p. 1.

The defendant, a graduate of a private high school, graduated from college, attended law school (he did not receive a diploma), received a master's degree, and had further higher education (Ex. 5 pp. 8-10). Additionally, the Government learned in this case that the defendant received a paralegal certificate from Hofstra University and was employed by several law firms. That substantial educational background and legal experience surely aided the defendant in this proceeding.

At the outset of the change of plea hearing, the defendant was sworn. (Ex. 5 p. 4 lines 9-18). Mr. McPherson was familiar with the Court, having appeared numerous times before it for his arraignments, hearings, and pretrial conference. Prior to moving into its colloquy, the Court specifically addressed the letter from Attorney Rossman that it had received after the defendant indicated a desire to plead guilty (Ex. 5 p. 5 lines 17-25, p. 6 lines 1-14). When asked clearly and directly if he wished to have new counsel, the defendant stated, "I'm not seeking new counsel in this case." When the Court asked if the defendant was ready to proceed with counsel of record, defendant stated, unequivocally, "Yes." This comported with his later answers, affirming his satisfaction with counsel's representation in this case.

---

preclude a finding that the content of his counsel's advice fell below the range of competence demanded of criminal defense counsel, necessitating a hearing to find the relevant facts. *Nahodil*, 36 F.3d at 327.

The Court next asked the defendant to let him know if he didn't understand anything, found anything confusing, or if the court spoke too quickly and he needed something repeated or further explained. (Ex. 5 p. 7 lines 8-13), to which the defendant agreed it was "fair." Again the Court reminded the defendant if he wished to consult with his attorney at any time in private he just needed to ask, and the defendant again stated he understood and it was fair (Ex. 5 p. 7 lines 22-25; p. 8 line 1). The Court then indicated that in order to accept the plea, the Court needed to be sure it was a knowing and voluntary acceptance, to which the defendant indicated he understood (Ex. 5 p. 8 lines 6-14).

The defendant denied any drug or alcohol abuse, medications, or mental illness, and again confirmed nothing discussed thus far confusing or difficult for the defendant to understand (Ex. 5 p. 10). The record, and observations of the defendant's demeanor and behavior during the colloquy, clearly demonstrates the defendant is an intelligent, well-educated, confident, assertive individual, rightfully proud of his accomplishments, and more than capable of a knowing, voluntary, and intelligent answer.

The Court then reviewed the charges against the defendant, who agreed he had a copy of the SSI, and then the defendant asked for a private conference with his attorney, which was immediately granted with the court's encouragement to "take as much time as you need" (Ex. 5 pp. 10 - 11). The Court for the *third* time reiterated the seriousness of the proceedings and the importance to take all the time he needed to confer with his attorney as desired (Ex. 5 p. 12 lines 6-11). The Court then confirmed the defendant understood the charges against him, that his attorney discussed the charges with him, and that the defendant had the right to go to trial, to which he responded unequivocally affirmatively (Ex. 5 pp. 12-13). When asked if his lawyer discussed defenses with him, the defendant indicated he had; and when asked if he was satisfied with the representation by counsel he unequivocally said "yes" (Ex. 5 p. 13).

Asked for the fourth time to let the Court know if more time for any conference between counsel and defendant was needed, both affirmed they understood (*Id*).

When asked if he reviewed and signed the plea agreement, the defendant unequivocally answered he had, and agreed he voluntarily signed it after reviewing it with his attorney (Ex. 5 pp. 14-15). The court then confirmed McPherson was aware of and signed his acknowledgement of rights (Ex. 5 p. 15). When asked if Mr. Cameron fully explained the terms of the plea agreement to the defendant, he stated, under oath, yes (Ex. 5 p. 16 lines 5-12). When asked if he discussed the possible sentence with his attorney, the defendant indicated he did, and that the plea agreement represented the entire agreement between himself and the government (Ex. 5 p. 16 lines 13-20). The Court then specifically acknowledged that the defendant was listening carefully.

At this point, a recitation of the facts supporting the plea were provided by the Government, to which defendant agreed he understood those facts and accepted them as true (Ex. 5 p. 18-19). When asked if he agreed to all of the terms of the plea agreement, what was read into the record, and what was contained in the agreement, he unequivocally indicated he did (Ex. 5 p. 19 lines 7-11). The Court also confirmed that all prior plea offers had been discussed between defendant and counsel (Ex. 5 p. 19 lines 12-16).[4] The Court confirmed there was no duress or any other improper influence on the defendant to enter into the guilty plea (Ex. 5 p. 19). The Court exhaustively discussed all of the rights that the defendant would be giving up (Ex. 5 pp. 26-30), and the defendant acknowledged he was aware of those rights and agreed to waive them.

---

[4] Plea negotiations began back in November of 2024, and even then McPherson was advised of his potential sentence (Exhibit 2). At the hearing on the change of plea, McPherson quibbled with several facts yet did not disagree with the substantive admissions of guilt. See Brown supra at 816 (District Court then asked if the summary was accurate and correct. Defendant replied that it was. Accordingly, we do not believe that the changes made during the plea colloquy render the plea of guilty unknowing and involuntary, nor do they provide a fair and just reason for the withdrawal of her plea).

The transcript demonstrates the defendant was competent, intelligent, and capable of asserting any concerns, including all of the concerns raised herein, yet failed to do so and specifically denied dissatisfaction with his counsel, his admission of guilt, and his knowing and voluntary waiver of rights. Only on the eve of his meeting for the presence report did the defendant change his mind, decide to contradict his sworn testimony, and hire attorney number four to challenge his plea. This ploy must be identified for what it is – trepidation to move forward with sentencing - and rejected.

### C.    The Defendant's Claims are Meritless

#### 1.    Assertion of Innocence

Counsel for the defendant asserts "red flags" are present in the change of plea hearing. The first "flag" is defendant's answer of "No" when asked if he was pleading guilty because he was guilty. Context is very important, and counsel, who was not present for the change of plea hearing, did not appreciate the circumstances surrounding that answer. Immediately prior to the question counsel challenges here, there were a series of questions for which defendant answered "no" –

> Court: "did anyone promise or offer you anything else?"
> Defendant: "No"
> Court: "did anyone use force…to get you to plead guilty?"
> Defendant: "No"
> Court: "did you seek to plead guilty…because you are guilty?"
> Defendant: "No"
> Court: "you do not?"
> **Defendant: "I seek to plead guilty because I am guilty"**

Ex. 5 pp.19-20. There was no hesitation or delay in defendant catching his mistake and correcting it, on his own, unprompted. The defendant did not ask for more time to discuss this question with Attorney Cameron, as he had done previously on his own initiation during the hearing. The Court then restated the question to ensure the defendant understood and was voluntarily, knowingly, and intelligently pleading guilty. The defendant, under oath,

unequivocally said he pled guilty because he is guilty (Ex. 5 p. 20 lines 9-11). The Court inquired further and asked if anyone told the defendant what to say or put words in his mouth and he indicated no one did so (Ex. 5 p. 20 lines 12-14).  The defendant's recent assertion of innocence is in direct contravention to his sworn testimony during his change of plea hearing.

### 2.      Absence of §3553(a) factors

The second purported "red flag" forwarded by the defense is the absence of the recitation of the 18 U.S.C. §3553(a) sentencing factors during the change of plea hearing. Counsel does not, because he cannot, cite any case or statutory authority requiring the recitation of those factors *at the time of the change of plea hearing*. As a matter of fact, case law shows courts have rejected that argument. See *United States v. Williams*, No. 23-1006, 2024 WL 3738641, at *4 (3d Cir. Aug. 9, 2024)(a *sentencing* court must consider the 3553 factors); *United States v. Fahie*, 815 F. App'x 678, 681 (3d Cir. 2020)(we are satisfied the court complied with the constitutional requirements in accepting the knowing, intelligent, and voluntary plea, and considering the 3553 factors *at sentencing*); *United States v. Holcomb*, 390 F. App'x 117, 121 (3d Cir. 2010)(in accord); *United States v. Grant*, 343 F. App'x 855, 856 (3d Cir. 2009)(in accord).

 The court advised the defendant of the maximum penalties he could receive (Ex. 5 pp. 22-23), and the defendant stated he understood them. The defendant acknowledged the sentence may be covered by the guidelines, that his lawyer reviewed the potential sentence with him, and that the guidelines were advisory and discretionary. The Court then delineated the 3553 factors (without calling them such) so the defendant understood at the time of sentencing they would also be considered (Ex. 5 pp. 24-25). The assertion that the defendant's guilty plea is involuntary because the defendant did not understand sentencing factors at the time of his plea is meritless.

### 3.    Inclusion of Gross Negligence

The third "red flag" identified by counsel for the defendant is the assertion that the SSI was a "sea change" from the earlier indictments because of the inclusion of a gross negligence standard. Counsel again is incorrect. In the first indictment filed against the defendant in this case, the defendant was charged, among other violations, with one count of Involuntary Manslaughter. In the Involuntary Manslaughter count, the indictment spelled-out that the defendant "acted without malice but with *gross negligence* in the commission of a lawful act which might produce death, that is, flying an aircraft, in an unlawful manner or without due caution and circumspection, resulting in the aircraft crashing shortly after takeoff and the death of K.K. But for MCPHERSON's intentional and *grossly negligent* disregard for the safety of K.K., knowing he was not competent to safely fly the aircraft as the pilot in command since he had never mastered the skills necessary to safely operate the aircraft, K.K. would not have died." ECF No. 1. p. 8 (emphasis added). Gross negligence was again explicated in the Superseding Indictment. ECF No. 29. The SSI merely provided additional detail about exactly *how* the defendant was grossly negligent, but this information was also contained in the Government's expert witness disclosures. Finally, the jury instructions applicable to the Involuntary Manslaughter Count did not change from the first indictment through the last, hence there was no "sea change" requiring yet another continuation of trial. To the contrary, the further detail provided in the SSI gave the defendant greater clarity and ability to prepare for trial and defend against how the Government would establish the element of gross negligence.

As a matter of fact, one of the numerous motions filed by defense counsel was a Motion to Dismiss challenging the allegations in the manslaughter count of the SSI. ECF Nos. 69 and 70. The defendant presented three arguments to support his motion: (1) his actions were not

grossly negligent during the flight resulting in the fatal crash; (2) the Government could not prove he had the requisite knowledge; and (3) his actions were not the proximate cause of K.K.'s death. The defendant agreed the facts as alleged met the elements of involuntary manslaughter. Finally, defense counsel, contrary to defendant's new declaration (¶5), *did* hire an expert to contradict the gross negligence allegation. See ECF No. 86-1 pp. 2, 12, and 14. For these reasons, there was no justification to continue the trial, which was scheduled a year and two months after the first allegation against defendant for his gross negligence was made.

### 4.    The Change of Plea Memorandum

The final "red flag" argument the defendant claims, is that his guilty plea is invalid because he had insufficient time to review the Government's change of plea memorandum. The insinuation is that an inability to review the change of plea memorandum prior to the plea hearing left the defendant ignorant of the facts of the case. A careful examination of the timeline of this case proves this contention to be baseless.  First, despite what counsel now states, the defendant was aware of the facts supporting the plea agreement, as such had been provided to him prior to the hearing, both in writing and orally. Each time the Government indicted the defendant, the defendant, an individual with legal training, received a copy of the indictment. The SSI, a 28-page speaking indictment, laid out in detail, the facts that gave rise to the violations charged in this case. Interestingly, defense counsel takes issue with the way gross negligence was charged in this case, however, that detailed count provided vivid factual specificity for  how the defendant committed the offense of Involuntary Manslaughter. The Government's change of plea memorandum would ultimately be written in large part from the language contained in the SSI.

Also, as stated earlier, the defendant attended Nouman Saleem's change of plea hearing and listened carefully from the front row of the courtroom as the Government explained the

factual basis in this case. The defendant also reviewed the discovery in this case, sat in attendance for the Rule 15 Deposition (the equivalent of trial testimony) of Mr. Brownell, reviewed the pretrial filings of his attorneys and counsel for the Government, attended the lengthy pretrial hearing in this case, as well as the final pretrial conference where the Court asked counsel detailed questions about evidence that would be introduced at trial.

During the change of plea hearing, the defendant did not state he did not see the statement of facts, he stated he did not *remember* them. Specifically, when asked if he reviewed the statement of facts, he responded "I don't believe so." *Sua sponte*, the Court suggested that the defendant take "the time you need to review it." When he asked for time to review them, the court gave him unlimited time to do so (Ex. 5 p. 36 lines 13-25). In fact, the Court reiterated to the defendant, "It's important. I want you to make sure that you've reviewed it and you have the opportunity to discuss it with Attorney Cameron, okay?" … "So we'll break till you're ready." (Ex. 5 p. 36-37) The Court then excused itself from the Courtroom to wait for the defendant's notification that he was ready to proceed again. The hearing broke for that meeting almost one hour after the change of plea began – no one was rushing the defendant or his counsel. The defendant met with his lawyer privately, after which he asked to and did meet with the Government. Thereafter, the parties covered the several facts with which the defendant had an issue – these were not "glaring errors"- after the court confirmed again the defendant had the agreement in his possession, and had enough time to review it and discuss it with his lawyer (Ex. 5 p. 38 lines 14-25 and p. 39 lines 1-11).

The "glaring errors" that counsel describes were minor issues that the parties and the Court agreed had no bearing on McPherson's guilt. The following were the defendant's concerns: 1) The defendant believed he was paid less of a percentage than that shown in the plea, and agreed to provide evidence in support of the lower number, to which all parties

agreed (Ex. 5 pp. 39-41); 2) The defendant believed he pulled himself away from the plane that he crashed, and that the witness who stated he pulled the defendant out of the wreckage was wrong, to which all parties agreed since it was irrelevant to any of the charges (Ex. 5 pp. 41-42); 3) The defendant disagreed that his aviation lawyer "admonished" him that he could not fly legally, instead insisting his lawyer "advised" him that he could not fly legally – again, all parties agreed to the non-substantive, semantic change (Ex. 5 p. 42); 4) The defendant quibbled with the statement he did not attempt an emergency landing as he flew over an open field. He agreed he flew over the open field and did not attempt an emergency landing in the field, but he claimed that he did attempt one after the field into a tree; the defendant agreed to the proposed change (Ex. 5 pp. 43-44) which did not substantively change the fact he did not attempt to land in the open field; and 5) Finally, the defendant did not want the statement that he failed to follow the proper flight take-off pattern, and the Government agreed to remove that language as it did not affect the substance of the plea (Ex. 5 p. 44). The court then affirmed with both parties that these minor, non-substantive changes had no effect on the proceedings (Ex. 5 p. 45).

The court then wrapped up the almost two-hour long hearing by asking the defendant *again* if he intended to plead guilty because he was in fact guilty, verifying defendant's knowing, voluntary, and intelligent agreement made under oath (Ex. 5 p. 46).

### C.    An Evidentiary Hearing is Unmerited

The defendant is not entitled to an evidentiary hearing on this motion. Any argument that the court must grant an evidentiary hearing because the defendant seeks to withdraw his guilty plea based on an ineffective assistance of counsel claim is wholly unsupported in this record. "[S]ome claims of ineffective assistance of counsel can be resolved on the basis of the trial transcripts and pleadings alone." *United States v. Taylor*, 139 F.3d 924, 932 (D.C.Cir.1998).

When a defendant's own "representations ... at the plea hearing as to the adequacy of counsel and the knowing and voluntary nature of his plea ... 'constitute a formidable barrier' to his later refutations," *id*. at 933 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)), a hearing is unwarranted. Allegations belied by the transcript of the Rule 11 colloquy and " 'in the face of the record are wholly incredible'" do not merit a hearing. *Id*.; *see also United States v. Sibblies*, 358 F. App'x 181, 182 (D.C. Cir. 2009). For all of these reasons, the court should deny the defendant's motion to withdraw his guilty plea.

## CONCLUSION

A change of mind or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty. *Jones*, 979 F.2d at 318. A guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not reasonably competent and the advice was not within the range of competence demanded of attorneys in criminal cases. *Strickland*, 466 U.S. at 687. Moreover, a mere assertion of innocence in the face of contradictory evidence is insufficient to meet the standard to withdraw a plea. *Brown*, 250 F.3d at 818.

The defendant's sworn representations to the court, counsel, and the victim's family at the two-hour long change of plea hearing must weigh heavily against this motion. His attorneys' efforts as evidenced in the record from August of 2024, through the change of plea hearing demonstrate more than competent representation and must be given great deference. Defendant's own participation in the pretrial discovery, hearings, and discussions bely his meager attempt to negate it all through his 11th hour declaration. The drastic remedy sought herein must be rejected or we risk allowing the defendant to wholly discard his sworn

testimony to this Court only three months ago and to make the very "mockery of the court"

the Supreme Court admonished, not advised, against.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ Robert W. Schopf*
ROBERT W. SCHOPF
Assistant United States Attorney

*/s/ Marie L. Miller*
MARIE MILLER
Special Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the Government's Motion upon all counsel of record via email.


<u>*/s/ Robert W. Schopf*</u>
ROBERT SCHOPF
Assistant United States Attorney

MARIE MILLER
Special Assistant United States Attorney


Date: 1/23/26