**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

───────────────────────────────

UNITED STATES OF AMERICA :
:
    **v.** : CRIMINAL NO.: 24-cr-00277-1
:
PHILIP EVERTON McPHERSON, II :

───────────────────────────────

**MEMORANDUM OPINION**

GALLAGHER, J.                                                 **April 13, 2026**

### I.     OVERVIEW

On October 14, 2025, Defendant Philip Everton McPherson, III pled guilty to forty-three

out of forty-four counts of the Second Superseding Indictment, all stemming from him illegally

providing flight lessons. After a lengthy change of plea hearing, the Court accepted McPherson's

guilty plea. He now moves to withdraw that guilty plea. For the reasons discussed below, the Court

denies McPherson's motion.

### II.    BACKGROUND

Philip McPherson's brief piloting career has been a string of near and actual catastrophes.

After several failed licensing attempts, McPherson obtained his commercial pilot certificate in late

2019 and his flight instructor airplane certificate a few months later.[1] *See* Change of Plea Mem.,

at 7 (ECF No. 119). Just four months into teaching flight lessons at Tri-State Aviation, McPherson

had his first crash while flying with a student. *See id.* at 8. The cause of that accident was "the

───────────────

[1] For purposes of providing this summary, the Court relies on the Change of Plea
Memorandum, which McPherson agreed accurately stated the facts, with the revisions made on
the record. *See* Tr. of Change of Plea Hr'g, at 45.

pilot's failure to maintain directional control while landing in a gusty crosswind, which resulted in a runway excursion and noseover." *See id.* McPherson had a second crash three months later while providing an instructional flight in similar weather conditions. *See id.* Tri-State Aviation fired McPherson, and Tri-State Aviation's employees filed a Federal Aviation Administration ("FAA") Safety Hotline complaint against him. *See id.* at 9.

McPherson began working for ProFlite Aero LLC ("ProFlite") in April 2021, where he received a percentage of what ProFlite charged its students. *See id.* at 7; Tr. of Change of Plea Hr'g., at 39-40 (ECF No. 133). In May 2021, the FAA instructed McPherson to schedule a re-examination for his airman's certificate within ten days, but he failed to do so. *See* Change of Plea Mem., at 9. When McPherson finally had his re-examination on September 29, 2021, not only did he fail, he nearly crashed again. *See id.* at 10.

On October 7, 2021, McPherson met with FAA Aviation Safety Inspector Arthur Brownell ("Inspector Brownell")  and voluntarily surrendered his commercial pilot's certificate. *See id.* at 11. That same day, Inspector Brownell issued McPherson a Temporary Airman Certificate, so he could fly himself or with an instructor, but carrying passengers was explicitly prohibited. *See id.* McPherson had until November 8, 2021 to demonstrate competence or receive an extension to be re-examined. *See id.* He failed to do so, and the Temporary Airman Certificate expired. *See id.* at 12.

McPherson and Nouman Saleem, the owner of ProFlite, agreed to have McPherson illegally provide flight lessons, and did so from October 6, 2021, to September 28, 2022. *See id.* at 11-12. These illegal flight lessons continued until September 28, 2022. *See id.* at 14. On September 28, 2022, almost immediately after McPherson departed from Queen City Airport in

2

Allentown, Pennsylvania with his flight student, K.K., the plane crashed about one mile away from the airport. *See id.* K.K. could not be rescued and was pronounced dead at the scene. *See id.* at 15.

After the accident, the FAA conducted an Emergency Order of Revocation Proceeding. *See id.* McPherson and Saleem submitted knowingly false declarations to the FAA, stating that Inspector Brownell advised that McPherson could continue instructing students with his Temporary Airman Certificate. *See id.* at 15-16. Inspector Brownell and Saleem later confirmed that Inspector Brownell never made this statement. *See id.* at 16.

### a. Indictments

On August 1, 2024, McPherson was indicted on one count of involuntary manslaughter, in violation of 18 U.S.C. § 1112, and forty counts of serving as an airman without a certificate, in violation of 49 U.S.C. § 46306(b)(7). *See* Indictment (ECF No. 1). The Government brought additional charges in the Superseding Indictment on February 13, 2025, adding one count of conspiracy to commit offenses against the United States, in violation of 18 U.S.C. § 371; one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; and one count of obstruction of an administrative proceeding, in violation of 18 U.S.C. § 1505. *See* Superseding Indictment (ECF No. 29). These additional counts relate to McPherson's and Saleem's scheme to defraud students, lie about the FAA giving McPherson permission to provide flight instruction, and allow McPherson to continue to fly without legal authorization. Two months later, the Government brought a Second Superseding Indictment, providing additional details as to how McPherson was allegedly grossly negligent. *See* Second Superseding Indictment, at 21-23 (ECF No. 48).

### b. Pretrial

Shortly after the Government brought the initial Indictment, the Federal Community Defender Office was appointed to represent McPherson. *See* Bail Status Order (ECF No. 7). Within a week of McPherson's federal defender entering his appearance, McPherson hired Attorney

Angelo Cameron to represent him instead. *See* Entry of Appearance (ECF No.13); Entry of Appearance (ECF No. 16). Attorney Cameron is a Georgetown University Law Center graduate with more than 35 years of criminal defense experience. *See* Decl. of Angelo L. Cameron, Esq. ("Cameron Dec.") ¶ 1 (ECF No. 138-3). On March 3, 2025, Mark Dombroff of Fox Rothschild LLP joined McPherson's legal team. *See* Entry of Appearance (ECF No. 44). Attorney Dombroff has four decades' worth of experience in the aviation and transportation industries. *See* Mark A. Dombroff, Fox Rothschild, https://www.foxrothschild.com/mark-a-dombroff-2 (last visited Apr. 10, 2026). That includes litigation, regulatory administrative and enforcement matters, and investigations. *See id.* In addition to the attorneys of record, McPherson was counseled by two other attorneys who did not enter their appearance: Jackson Barnett, an expert aviation lawyer, and Gregory Watts, a criminal defense lawyer. *See* Cameron Decl. ¶ 3.

At the outset, Attorney Cameron actively litigated McPherson's case. *See* Tr. of Oral Arg., at 57-58 (Jan. 27, 2026) (ECF No. 145) (Government discussing Attorney Cameron's involvement). Attorney Cameron reviewed the criminal discovery and administrative case information, participated in a Rule 15 deposition, hired an expert, and prepared exhibits and witnesses for trial. *See* Cameron Decl. ¶ 5. Additionally, he engaged in numerous discussions with McPherson, McPherson's other attorneys, McPherson's family, witnesses, and the Government. *See id.* ¶ 6. Attorney Cameron also filed several pretrial motions, opposed several motions filed by the Government, and attended an evidentiary hearing. *See id.* ¶ 5; *see, e.g.*, Def.'s Mot. to Dismiss (ECF No. 69); Def.'s Mot. For Discovery (ECF No. 75); Def.'s Mot. *in Lim.* To Preclude Evid. (ECF No. 71); Def.'s Resp. to Government's Mot. *in Lim.* to Exclude Deceased Student's Toxicology Report (ECF No. 92). Those motions and oppositions resulted in some crucial evidentiary rulings in McPherson's favor. McPherson won the ability to introduce the Aviation

Investigation Final Report prepared by the National Transportation Safety Board ("NTSB Report") and the decedent's toxicology report into evidence at trial, and his expert was able to testify in part at trial. *See* Order, Oct. 3, 2025 (ECF No. 112).

### c. Pleading Guilty

After the final pretrial conference on October 8, 2025, Attorney Cameron and McPherson met with the Government at the United States Attorney's Office to discuss exhibits and stipulations. *See* Cameron Decl. ¶ 10; Decl. of Philip E. McPherson, II ("McPherson Decl.") ¶ 6 (ECF No. 136-1). McPherson represents that he and Attorney Cameron met with the Government and, during that meeting, the Government offered a plea agreement. *See* McPherson Decl. ¶ 6. The Government would dismiss Count One, but McPherson would have to plead guilty to the remaining counts. *See id.* McPherson claims that Attorney Cameron said "very little" except: "It's a good deal." *See id.* McPherson also asserts that he and Attorney Cameron "had no private discussion about the plea offer at that time." *See id.*

Attorney Cameron's recollection is drastically different. Attorney Cameron reports that McPherson—without prompting—became emotional at that meeting and expressed that he wished to take responsibility for his actions. *See* Cameron Decl. ¶ 10; *see also* Decl. of Andrew Timonere, Special Agent, DOT OIG ("Timonere Decl.") ¶ 4 (ECF No. 138-4) (corroborating that McPherson became emotional and wanted to assume responsibility); Tr. of Oral Arg., at 67 (Government reporting that Attorney Cameron said McPherson wants to discuss a potential plea and that McPherson became emotional). As Attorney Cameron puts it, the Government did not even suggest a proffer, let alone provide McPherson a proffer letter. *See* Cameron Decl. ¶ 11. The Government made clear to McPherson that if he was going to plead guilty, there was going to be a deadline to do so. *See* Tr. of Oral Arg., at 71. The Government told him the guilty plea had to

happen by close of business that day, not when they were picking a jury the following week.[2] *See id.* McPherson said he understood. *See id.*

The Government left the room, and Attorney Cameron and McPherson discussed the plea for approximately a half hour before inviting the Government back. *See* Cameron Decl. ¶ 12. McPherson did not want to plead guilty to defrauding the FAA because he hoped his pilot career was not over, but he agreed to plead guilty to the rest. *See id.*; *see also* Timonere Decl. ¶ 7 (same). When asked about the manslaughter charge specifically, McPherson explained that he was fine with it because he was guilty. *See* Cameron Decl. ¶ 12; *see also* Timonere Decl. ¶ 7 (same). McPherson even spoke with the deceased family on his own volition to give them closure. *See* Cameron Decl. ¶ 12.

Attorney Cameron further reports that he and McPherson asked the Government for the proposed sentencing for the plea, which it did. *See* Cameron Decl. ¶¶ 11, 13; Timonere Decl. ¶ 5 (corroborating question about sentencing exposure); Tr. of Oral Arg., at 68 (Government reporting it "laid out the guidelines in this case" and McPherson was "very concerned about every detail of this"). At this point, McPherson advised that he wanted to discuss the plea with his family and would contact Attorney Cameron later. *See* Cameron Decl. ¶ 13; *see also* Timonere Decl. ¶ 8. After speaking with his family and his aviation lawyer,[3] he told Attorney Cameron that he would like to move forward with the plea agreement.[4] *See* Cameron Decl. ¶ 13.

---

[2] The exact timing of this statement is unclear.

[3] This discussion with Attorney Barnett is referenced in an email produced by McPherson during the hearing. *See* Mot. to Withdraw Guilty Plea, at Ex. K ("[I]t's a global offer as Jackson Barnett it said [sic] . . . .").

[4] Special Agent Andrew Timonere also reports that the AUSAs were asked to have a telephone conference with McPherson's other attorneys, Gregory Watts and Jackson Barnett. *See* Timonere Decl. ¶ 9. However, Special Agent Timonere was not part of that call. *See id.*

The Government drafted a plea agreement, with McPherson pleading guilty to everything except Count 1—per McPherson's request. *See* Tr. of Oral Arg., at 68. Unauthenticated emails produced by McPherson during the hearing suggest that the Government sent Attorney Cameron the approved guilty plea agreement on October 9, 2025, at 2:56 PM. *See* Mot. to Withdraw Guilty Plea, at Ex. K. A few minutes after that, Attorney Cameron appears to have forwarded the guilty plea agreement to McPherson, explaining that the Government dropped a conspiracy charge. *See id.* Attorney Cameron informed McPherson that he must sign the agreement by the close of business that day. *See id.* He told McPherson to sign it, and then Attorney Cameron would send it to the Government once Attorney Cameron arrived at his hotel. *See id.* McPherson claims that he signed the plea agreement and texted it to Attorney Cameron that same day around 9:00 PM. *See* McPherson Decl. ¶ 7; *See* Mot. to Withdraw Guilty Plea, at Ex. M.

### d.  Withdrawing Guilty Plea: First Attempt

McPherson claims that he immediately regretted signing the guilty plea agreement. *See* McPherson Decl. ¶ 9. He purportedly felt that Attorney Cameron was not advocating for him and was unprepared to try his case. *See id.* He called other attorneys to find new representation. *See id.* Among those was Marianna Rossman of the Rossman Firm. *See id.* On October 10, 2025, at 2:48 PM, Attorney Rossman emailed a letter to the Court, vaguely asking "for the Court's permission before entering [her] appearance given [her] need for more time to prepare as new counsel." *See* Letter from Marianna Rossman to Judge John M. Gallagher (Oct. 10, 2025) (ECF No. 136-3).[5] The Court responded to Attorney Rossman's letter via email that same afternoon, informing her that "[w]hether counsel should enter an appearance on the docket is a matter between counsel and

---

[5] The original letter was emailed to the Court. It was not filed until McPherson filed his Motion to Withdraw Guilty Plea.

client," and reminded her that Court would proceed as planned. *See* Mot. to Withdraw Guilty Plea, at Ex. D (ECF No. 136-4). The Government circulated its change of plea memorandum on October 13, 2025, at 9:14 AM. *See id.* at Ex. E (ECF No. 136-5).

The Court held the change of plea hearing on Tuesday, October 14, 2025. Notably, Attorney Rossman was not present and did not enter her appearance on behalf of McPherson. *See* Tr. of Change of Plea Hr'g, at 3-4. Meanwhile, Attorney Camerson was present on McPherson's behalf. *See id.* As part of swearing in McPherson, the Court advised that it was asking him to "take an oath, make a promise that everything [he said] in here will be the truth with the understanding that if [he made] that promise and [he took] that oath and [he broke] it, a lot of bad things could happen." *See id.* at 4. The Court further explained to McPherson that he "could get [him]self in trouble in this case, [he] could get even wind up getting [him]self charges in another case for false statements and things like that." *See id.* McPherson acknowledged that he understood how serious the oath was, and he was still willing to take it. *See id.*

Once McPherson was sworn in, but before proceeding with the change of plea, the Court inquired as to the status of counsel. *See id.* at 5-6. The Court explained to McPherson that it received a letter from Attorney Rossman, which suggested that McPherson might be seeking new counsel. *See id.* at 6. The Court informed McPherson that it told Attorney Rossman "that's between her and the client, which potentially would have been" McPherson, but it did not change the dates. *See id.* The Court then engaged McPherson in the following colloquy:

> THE COURT: I need to clarify. Are you raising a concern with your counsel? Are you seeking new counsel in this case?
>
> THE DEFENDANT: I'm not seeking new counsel in this case.
>
> THE COURT: Okay. So you're ready to proceed?
>
> THE DEFENDANT: Yes.

> THE COURT: Okay. All right. You're familiar with the letter that I'm talking about from Attorney Rossman?
>
> THE DEFENDANT: I am. I am. I saw it, I have it.
>
> THE COURT: Okay. All right. And I just want to make sure, notwithstanding this letter, you're ready to proceed? You're here with Attorney Cameron and we can go forward with the guilty plea?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay, very good.

*See id.* After confirming with Attorney Cameron and the Government that they were satisfied, the Court proceeded with the change of plea hearing. *See id.* at 5-6.

### e. Change of Plea Hearing

Before starting the change of plea portion of the October 14, 2025 hearing, the Court instructed McPherson to raise his hand and let the Court know if anything the Court said did not make sense or was confusing. *See id.* at 7. The Court also instructed McPherson to let the Court know if he would like to consult with Attorney Cameron at any point during the hearing, and the Court would ensure that he could do so in private. *See id.* McPherson acknowledged that these instructions were "fair." *See id.* at 7-8. In fact, McPherson had taken the Court up on its offer to consult with Attorney Cameron at least once during the hearing. *See id.* at 11.

McPherson stated that he understood what the guilty plea would entail. *See id.* Additionally, McPherson confirmed that his attorney discussed the charges against McPherson and their potential defenses, McPherson's right to plead not guilty, his right to go to trial, and his rights at trial. *See id.* at 12-13. McPherson also confirmed that he had enough time to discuss this matter with Attorney Cameron, and he was satisfied with Attorney Cameron's advice and representation. *See id.* at 13.

9

McPherson twice confirmed that he voluntarily signed the guilty plea agreement and acknowledgement of rights after reviewing them with Attorney Cameron. *See id.* at 14-16. McPherson also confirmed that Attorney Cameron fully explained both to him and that he **understands** them. *See id.* at 16. After the Government briefly summarized the terms of the guilty plea, McPherson stated that he agreed to all the terms. *See id.* at 18-19. McPherson confirmed that no one used force, violence, or threats to get him to plead guilty. *See id.* at 19.

When the Court asked, "Do you seek to plead guilty here today of your own free will, sir, because you are guilty," McPherson mistakenly replied, "No." *See id.* at 19-20. In response, the Court followed up:

> THE COURT: You do not?
>
> THE DEFENDANT: Excuse, do I seek to plead guilty because I am guilty?
>
> THE COURT: Yes. Are you -- let me restate the question, okay? And if you're confused, let me know or if you need to speak to counsel let me know. Sir, do you seek to plead guilty today of your own free will because you admit you are guilty?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did anyone tell you what to say today or put words in your mouth?
>
> THE DEFENDANT: No.

*See id.* at 20.

McPherson confirmed that he understood the maximum possible punishment and that the offenses are covered by the advisory sentencing guidelines. *See id.* at 23-24. He also confirmed that he discussed with his attorney how the advisory sentencing guidelines might apply to his case. *See id.* at 24. That understanding includes the Court being required to calculate the guidelines to consider but not required to follow because they are advisory. *See id.* at 24. McPherson also

understood that the Court must consider sentencing factors, "includ[ing], but . . . not limited to, the nature and the circumstances of the offenses that [McPherson] committed, [McPherson's] personal history and characteristics, the need for the sentence to reflect the seriousness of these offenses, the need to promote respect for the law, and the need to provide just punishment for the offenses. *See id.* at 25.

After the Government summarized the change of plea memorandum, the Court asked McPherson if he had a copy of the "guilty plea memorandum." *See id.* at 35-36. McPherson followed up, asking whether the Court meant the change of plea memorandum or the guilty plea agreement. *See id.* at 36. The Court clarified that it was the change of plea memorandum. *See id.* McPherson stated that he had a copy, but he did not believe he had an opportunity to review it. *See id.* The Court "suggested *we* take the time [McPherson] need[ed] to review it." *See id.* (emphasis added). McPherson asked the Court to "[g]ive [him] five minutes or so?" *See id.* The Court specifically cautioned him: "It's important. I want you to make sure that you've reviewed it and you have the opportunity to discuss it with Attorney Cameron, okay? . . . So *we'll break till you're ready*." *See id.* at 36-37 (emphasis added).

The hearing transcript reflects that recess began at 2:21 PM. *See id.* at 37. The Court's internal notes reflect that the Court was in recess for thirty minutes and that the parties left the courtroom. McPherson met with the Government during recess, and not once did he assert his innocence, suggest that he no longer wanted to plead guilty, or challenge any of the counts to which he was pleading guilty. *See* Timonere Decl. ¶ 13(a)-(b). When the Court went back on the record, it asked McPherson: "did you have time to review what's on the paper?" *See* Tr. of Change of Plea Hr'g, at 39. McPherson replied, "Yes." *See id.* McPherson made specific revisions to the facts set forth in the change of plea memorandum.

11

First, McPherson informed the Government that the amount he received from ProFlite students may have been lower than the sixty to seventy percent set forth in the change of plea memorandum. *See id.* at 39-40. Speaking to McPherson, the Court clarified that it appeared McPherson was "not comfortable agreeing to a fact that might not be quite what the Government is suggesting it is?" *See id.* at 41. McPherson replied, "That's all it is. Yes." *See id.* The parties agreed that this was not material, and—as McPherson noted—could be confirmed by "[a] simple receipt check." *See id.* at 40-41.

Second, McPherson disputed the assertion that he was pulled from the plane. *See id.* at 41-42. McPherson maintains that he was able to remove himself from the plane, and he was then pulled to safety while the plane burned. *See id.* at 42. The parties concurred that this revision did not affect the factual basis for the elements of any count. *See id.*

Third, McPherson disputed that "his attorney ***admonished*** him under the law, that the Defendant should no longer fly at all." *See id.* (emphasis added). McPherson asked the Government say "advised" instead of "admonished." *See id.* The parties agreed to this revision. *See id.* at 42-43.

Fourth, McPherson had revisions to the Government's assertion that "Defendant continued to fly the plane directly over a large open field at low altitude and did not attempt an emergency landing." *See id.* at 43. McPherson asked the Government to specify that he did not attempt an emergency landing ***in that field***, as the crash site ***was*** an attempt at an emergency landing. *See id.* Thus, agreed-upon revision was: "the Defendant continued to fly the plane directly over a large open field at low altitude and did not attempt to land in that field to conduct an emergency landing." *See id.* at 44.

Lastly, McPherson asked the Government to delete in its entirety: "The Defendant failed to follow the appropriate flight takeoff pattern which would have provided him an additional area for him to conduct an emergency landing but instead placed him on direct route toward Medivac/Helicopter operations at Lehigh Valley Hospital Cedar Crest." *See id.* The Government agreed to do so. *See id.*

The Court confirmed with the Government and Attorney Cameron that, with the amendments, "the facts still reach the required factual recitation necessary to support the elements of the offenses." *See id.* at 45. Turning to McPherson, the Court asked: "with the amendments that we discussed and that you worked out between your side and the Government side, do you agree that the facts represented by the Government in the change of plea memorandum, and those, again, verbally on the record here today, were accurately stated and are what the Government could prove if this case went to trial?" *See id.* McPherson said yes. *See id.*

Once again, the Court confirmed that McPherson wished to plead guilty:

> THE COURT: So now, Mr. McPherson, is it your wish, at this time, to formally enter a plea of guilty to Counts 2 through 44 of the second superseding indictment?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And Mr. McPherson, are you pleading guilty because you admit that you're actually guilty of committing the offenses listed in the second superseding indictment?
>
> THE DEFENDANT: Yes.

*See id.* at 45-46.

The Court then took McPherson's guilty plea. *See id.* at 46-47. The Court also found that "McPherson is fully alert, he is competent, and he is capable of entering an informed plea and this plea is a knowing and voluntary plea supported by an independent basis and fact containing each

of the essential elements of the offenses to which" he pled guilty. *See id.* at 47. The Court accepted the guilty plea. *See id.*

### f. Withdrawing Guilty Plea: Second Attempt

On November 20, 2025, Attorney Joseph Mancano entered his appearance on behalf of McPherson. *See* Entry of Appearance (ECF No. 131). Attorney Cameron filed a motion to withdraw as counsel, which the Court granted. *See* Mot. to Withdraw as Counsel of Record (ECF No. 132); Order, Nov. 24, 2025 (ECF No. 135). Under Attorney Mancano's representation, McPherson filed a Motion to Withdraw the Guilty Plea. *See generally* Mot. to Withdraw Guilty Plea (ECF No. 136). McPherson argues that his plea should be withdrawn because he is actually innocent, Attorney Cameron provided ineffective assistance of counsel, the second superseding indictment was a "sea change" from earlier indictments, McPherson's guilty plea was "tendered in haste," the Court did not ask if he understood the factors set forth in 18 U.S.C. § 3553(a) factors or whether his attorney discussed those factors with him, and the Government would not be prejudiced. *See generally id.* In response, the Government argues that McPherson received "robust, effective legal representation," the change of plea hearing was fair and just, McPherson's claim of innocence is meritless, and it does not have to prove prejudice until McPherson meets his burden. *See generally* Government's Response Opposing Defendant's Motion to Withdraw His Guilty Plea (ECF No. 138).

The Court held a hearing on the Motion on January 27, 2026. During the hearing, McPherson claimed that he was not raising an ineffective assistance of counsel claim against Attorney Cameron. Nonetheless, McPherson spent the bulk of oral argument attacking Attorney Cameron's representation. McPherson also introduced several new exhibits during the hearing to support his argument. At the end of the hearing, the Court ordered supplemental briefing as to prejudice and ineffective assistance of counsel, which the parties submitted. *See generally* Gov't's

14

Suppl. Br. Opposing the Def.'s Mot. to Withdraw His Guilty Plea (ECF No. 140); Def.'s Suppl.

Br. in Supp. of Mot. to Withdraw Guilty Plea ("Def.'s Suppl. Br.") (ECF No. 141).

### III.    LEGAL STANDARD

"A guilty plea is a grave and solemn act accepted only with care and discernment." *United States v. Agarwal*, 24 F.4th 886, 890 (3d Cir. 2022) (citation modified) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Before the Court accepts the guilty plea, the defendant may withdraw it "for any reason or no reason." *See* FED. R. CRIM. PRO. 11(d)(1). But after the Court accepts the plea, the defendant faces a substantial burden. *See United States v. Shaheed*, 688 F. App'x 120, 122 (3d Cir. 2017) (citing *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003)). The defendant can only withdraw a guilty plea after the Court accepts the plea, but before imposing the sentence, if "the defendant can show a fair and just reason for requesting the withdrawal."[6] *See* FED. R. CRIM. PRO. 11(d)(2)(B); *see also Shaheed*, 688 F. App'x. at 122 ("Withdrawal of a guilty

---

[6] McPherson relies on *Government of Virgin Islands v. Berry*, 631 F.2d 214, 219 (3d Cir. 1980) for the proposition that a presentence motion to withdraw a guilty plea should be "liberally construed in favor of the accused and should be granted freely." *See* Def.'s Suppl. Br., at 2. The Court is skeptical that this remains good law.

When *Berry* was decided, the governing rule stated: "A motion to withdraw a plea of guilty . . . may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." *See Berry*, 631 F.2d at 219 n.1 (quoting FED. R. CRIM. PRO. 32(d)). The Federal Rules were amended in 1983 and adopted the "fair-and-just reason standard," now found in Rule 11(d)(2)(B). *See United States v. Ho-Man Lee*, 664 F. App'x. 126, 127 (3d Cir. 2016); FED. R. CRIM. PRO. 11(d)(2)(B) (requiring defendant to "show a fair and just reason for requesting the withdrawal"). Based on the Court's survey of cases, the Third Circuit abandoned the "granted freely" directive. When the Third Circuit did address it, it was largely unfavorable. *See United States v. Martinez*, 785 F.2d 111, 115–16 (3d Cir. 1986) (rejecting defendant's argument that "absent any showing of prejudice to the government, withdrawal should be freely granted"); *United States v. Ho-Man Lee*, 664 F. App'x 126, 127 n.1 (3d Cir. 2016) (recognizing "fair-and-just-reason standard" resulted in the Third Circuit applying "a more stringent test to adjudicate the merit of withdrawal motions"). *But see United States v. Davis*, 106 F. App'x. 788, 789 (3d Cir. 2004) (explaining withdrawal motions "should be freely granted").

15

plea is not an absolute right, and so a defendant is not entitled to withdraw a plea simply at his whim." (citations omitted) (citation modified)). "'A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons' for withdrawal." *Agarwal*, 24 F.4th at 890 (quoting *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011)).

When determining whether to exercise its discretion and withdraw the plea, the Court must consider whether: "(1) the defendant asserts his innocence; (2) the defendant proffered strong reasons justifying the withdrawal; and (3) the government would be prejudiced by the withdrawal." *Siddons*, 660 F.3d at 703 (quoting *United States v. King*, 604 F.3d 125, 139 (3d Cir. 2010)); *United States v. Schwartz*, 403 F. App'x 781, 783 (3d Cir. 2010) (citing *United States v. Martinez*, 785 F.2d 111, 114 (3d Cir. 1986)) (explaining withdrawing plea is discretionary). "[T]he court balances each factor, and defendant's failure to establish one factor does not necessarily quash the motion." *United States v. Ventura-Amparo*, No. 22-CR-430, 2024 WL 4205572, at *3 (E.D. Pa. Sept. 16, 2024) (citing *United States v. Wilder*, 134 F. App'x 527, 528 (3d Cir. 2005)). However, the Government need not show prejudice if the defendant fails to meet his burden under the other factors. *Id.* (citing *United States v. Fuller*, 311 F. App'x 550, 552 (3d Cir. 2009)).

## IV.    ANALYSIS

The Court must consider whether McPherson asserts his innocence, the strength of his reasons for withdrawing the guilty plea, and whether the Government would be prejudiced. McPherson argues that his credible assertions of innocence, Attorney Cameron's ineffective assistance of counsel, the "sea change" in indictments, the plea being "tendered in haste," the Court failing to confirm whether he understood the §3553(a) factors or discussed them with counsel, and

the lack of prejudice to the Government collectively establish that the Court should withdraw his guilty plea. The Court disagrees on all fronts.

### a.  McPherson's Assertion of Innocence

It is well established that "[b]ald assertions of innocence are insufficient to permit a defendant to withdraw [his] guilty plea." *United States v. Kwasnik*, 55 F.4th 212, 217 (3d Cir. 2022) (second alteration in original) (quoting *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001)). "Assertions of innocence must be buttressed by facts in the record that support a claimed defense." *Id.* (second alteration in original) (quoting *Brown*, 250 F.3d at 818).

McPherson asserts that he did not operate the aircraft in a grossly negligent manner and that he lacked the requisite mens rea to be convicted of Counts 2, 4, and 5 through 44. *See* Mot. to Withdraw Guilty Plea, at 12-15. To support his claim, he points to the NTSB Report, a statement from Austin Lessard, Saleem's text messages, and a video that the Government maintains does not exist. *See id.* But this is all evidence that McPherson knew about when he waived the right to place that evidence—or lack thereof—before a jury.[7] *See Kwasnik*, 55 F.4th at 217 (holding district court did not abuse discretion in denying motion to withdraw where the so-called newly discovered evidence was "the same stuff that he has been preaching about for years" (citation modified)); *United States v. Nikparvar-Fard*, No. CR 18-101-1, 2023 WL 7412921, at *4 (E.D. Pa. Nov. 9, 2023), *aff'd,* No. 23-3270, 2025 WL 471104 (3d Cir. Feb. 12, 2025) (denying motion to withdraw guilty plea where evidence was available to defendant when he pled guilty and waived his right to place evidence in front of jury).

---

[7] During oral argument, the Court specifically asked what evidence was new to McPherson since pleading guilty. *See* Tr. of Oral Arg., at 86-77 ("[I]n this assertion of innocence, what did he not put into that calculus back in October when he pled guilty that makes the assertion of innocence have some more or deserve some more emphasis here."). He did not point to any new evidence. *See generally id.*

17

Defendant contends that his initial "no" response to whether he was pleading guilty because he was guilty is consistent with his belief that the record supports viable defenses. *See* Mot. to Withdraw Guilty Plea, at 12. That ignores what occurred thereafter. When McPherson answered "no" to this question, the Court followed up:

> THE COURT: You do not?
>
> THE DEFENDANT: Excuse, do I seek to plead guilty because I am guilty?
>
> THE COURT: Yes. Are you -- let me restate the question, okay? And if you're confused, let me know or if you need to speak to counsel let me know. Sir, do you seek to plead guilty today of your own free will because you admit you are guilty?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did anyone tell you what to say today or put words in your mouth?
>
> THE DEFENDANT: No.

*See* Tr. of Change of Plea Hr'g, at 20. The Court gave McPherson the opportunity to say he was confused or to speak with counsel, and he did not. Moreover, the Court had the benefit of observing McPherson firsthand during this encounter and finds that McPherson misspoke. Accordingly, the Court is not convinced by McPherson's attempt to recast his misstatement as a vehicle for throwing out the entire guilty plea. *See Jones*, 336 F.3d at 253 (holding defendant failed to provide a "convincing reason" for taking contradictory positions).

McPherson's lack of credibility is also relevant to the Court's conclusion that he has not met his burden of asserting actual innocence. *See Nikparvar-Fard*, 2023 WL 7412921, at *3 (finding defendant's "account of why he pled guilty, but now seeks to withdraw his guilty plea . . . not at all convincing" where the Court concluded he was not credible after "observ[ing] him for many years" in his criminal case and "demonstrated no appreciation for the significance of taking

18

an oath"); *United States v. Brooks*, 431 F. App'x 95, 99–100 (3d Cir. 2011) ("Such credibility findings are committed in the first instance to the discretion of the trial judge." (collecting cases)). Most obviously, McPherson admits to misleading the Court during his guilty plea colloquy through his claims in this Motion, but his misrepresentations extend further than that. *See Nikparvar-Fard*, 2023 WL 7412921, at *4 (observing defendant "repeatedly testified under oath that he acted with knowledge and intent" and had "an opportunity to clarify the factual basis for the conviction, . . . which he declined"). McPherson's version of the guilty plea negotiations is vastly different than how Attorney Cameron and the Government reported it.[8] McPherson also appears to have represented to his new counsel that he never left the courtroom while reviewing the change of plea memorandum during the change of plea hearing, when the Court knows that is undoubtedly incorrect. *See* Tr. of Oral Arg., at 94-95. McPherson's honesty with respect to the case itself is also questionable. McPherson's conduct with respect to his logbook was suspect at best.[9] Further,

---

[8] McPherson claims that the Government offered him the plea deal, Attorney Cameron said very little, McPherson had no private discussion with Attorney Cameron, and McPherson felt "pressured" to plead guilty. *See* McPherson Decl. ¶ 6. Attorney Cameron, however, reports that the Government did not suggest a proffer, McPherson initiated plea discussions, Attorney Cameron discussed the plea privately for approximately thirty minutes, the parties discussed sentencing exposure at length, at McPherson's request, and McPherson claimed to understand the urgency of the guilty plea agreement. *See* Cameron Decl. ¶¶ 10-12; Timonere Decl. ¶¶ 4, 7; Tr. of Oral Arg., at 67, 71.

[9] McPherson's flight instructor logbook was a central issue at the final pretrial conference. The Court did not rule on how it would be addressed at trial because McPherson pled guilty before the Court could do so, and the Court is not doing so now. Nonetheless, the Court will summarize the issue because it is relevant to McPherson's credibility.

McPherson's expert, John M. Allen, relied on two pages from McPherson's logbook. *See* Allen Report, at 103-04 (ECF No. 86-1). The pictures attached to this report clearly depict two pages from a leatherbound book. *See id.* After receiving the report, the Government asked for McPherson's physical logbook. When Agent Timonere attempted to pick up the logbook, Attorney Cameron advised McPherson represented to him that his logbook was only the two pages and there was nothing else that pertained to his case. When the Government explained why McPherson was incorrect, McPherson pivoted, stating he lost the logbook.

McPherson insists that Inspector Brownell told him he could continue to teach flight lessons, in direct contradiction to what the Government represents Inspector Brownell and Saleem would testify at trial. Collectively, these facts cast serious doubt on McPherson's candor and claims of innocence.

### b.  Strength of Reasons for Withdrawal

McPherson must provide "sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." *See United States v. James*, 928 F.3d 247, 257 (3d Cir. 2019) (quoting *Jones*, 336 F.3d at 253). The Third Circuit has made clear that "[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Jones*, 336 F.3d at 252.

McPherson discusses several reasons for withdrawing his guilty plea: (1) Attorney Cameron provided McPherson ineffective assistance of counsel; (2) the second superseding indictment was a "sea change" from earlier indictments; (3) McPherson's guilty plea was "tendered in haste"; and (4) the Court never asked McPherson if he understood the factors set forth in 18 U.S.C. § 3553(a) or whether his attorney discussed those factors with him. None of these reasons are persuasive.

### 1.  Ineffective Assistance of Counsel[10]

McPherson contends that Attorney Cameron provided ineffective assistance of counsel. "Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of

---

[10] McPherson maintains that he was not raising an ineffective assistance claim. *See* Tr. of Oral Arg., at 13 (Jan. 27, 2026). The arguments made in his brief and during oral argument stand in stark contrast to that assertion. *See id.* at 14-45. Indeed, McPherson went as far as saying Attorney Cameron's representation was "woefully inadequate assistance," "a clear case of . . .

competent counsel." *United States v. Hafner*, No. 23-3258, 2026 WL 560227, at *4 (3d Cir. Feb. 27, 2026) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010)). "A valid claim of ineffective assistance of counsel can negate the intelligent and voluntary nature of a guilty plea." *James*, 928 F.3d at 258 (citing *Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985)). Accordingly, ineffective assistance of counsel can be grounds for withdrawing the plea. *See id.*; *Hafner*, 2026 WL 560227, at *4 (quoting *Jones*, 336 F.3d at 253–54).

To withdraw a guilty plea based on ineffective assistance of counsel, the defendant must show that: (1) "his attorney's advice was under all the circumstances unreasonable under prevailing professional norms," and (2) "he suffered 'sufficient prejudice' from his counsel's errors." *James*, 928 F.3d at 258. Establishing deficient performance requires showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Serrano*, 798 F. Supp. 2d 634, 641 (E.D. Pa. 2011) (quoting *Harrington v. Richter,* 562 U.S. 86, 104 (2011)). Meanwhile, "[t]he second prong requires the defendant to demonstrate 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Hafner*, 2026 WL 560227, at *4 (quoting *Lockhart*, 474 U.S. at 59). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *James*, 928 F.3d at 259 (citation modified) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

McPherson takes issue with Attorney Cameron allegedly not reviewing the guilty plea agreement with him. Again, McPherson contradicts what he told the Court during the guilty plea

---

ineffective assistance," and "patently ineffective." *See id.* at 23, 34, 46, 54. He also doubled down in his supplemental brief to the Court. *See* Def.'s Suppl. Br., at 2 ("The facts and circumstances demonstrate that Angelo Cameron did not provide even minimally effective representation to Mr. McPherson in connection with the guilty plea.").

colloquy. He stated that he read and discussed the guilty plea agreement with Attorney Cameron, voluntarily signed both documents, and was satisfied with Attorney Cameron's representation. *See* Tr. of Change of Plea, at 13, 15-16. Attorney Cameron also told the Court that he had enough time to discuss this matter with McPherson. *See id.* at 13. Accordingly, the Court declines to find Attorney Cameron's representation "unreasonable under prevailing professional norms." *See James*, 928 F.3d at 258-59  (explaining defendant stating during colloquy that he was satisfied with representation "alone, given the rest of this record, [was] a sufficient ground to disallow a charge of ineffective assistance of counsel as a basis for withdrawal of the guilty plea" (citing *United States v. Erwin*, 765 F.3d 219, 226 (3d Cir. 2014))); *Nikparvar-Fard*, 2023 WL 7412921, at *4-5 (rejecting ineffective assistance of counsel argument because defendant testified he was satisfied with his lawyers, and his lawyers testified defendant pled knowingly and voluntarily); *cf. Hafner*, 2026 WL 560227, at *4 (declining to consider whether defendant's representation was deficient where defendant told counsel to seek a plea deal, defendant accepted plea deal after discussing strength of Government's evidence, and counsel admonished defendant not to accept if he had reservations about appealing pretrial rulings).

McPherson also claims he pled guilty because his attorney was unprepared for trial.[11] That was a tactical decision, which is not an appropriate basis for withdrawing a guilty plea. *See Gov't*

---

[11] Though the only part of Attorney Cameron's representation that is relevant here is his representation during the guilty plea phase, McPherson also complains of Attorney Cameron's representation throughout the case. The Court is unpersuaded. In addition to the extensive work that Attorney Cameron did throughout this case, he obtained crucial evidentiary rulings in McPherson's favor. *See* Order, ¶ 1, Oct. 3, 2025 (ECF No. 112) (admitting NTSB Report into evidence because 49 U.S.C. § 1154(b) did not bar its admissibility in this criminal proceeding); Order, ¶ 5, Oct. 3, 2025 (ECF No. 112) (admitting toxicology report because student's intoxication was a jury question); Order, ¶ 6, Oct. 3, 2025 (ECF No. 112) (allowing McPherson's expert to testify in part). Attorney Cameron also worked with the Government to submit substantial pretrial filings in a timely manner. The Court finds that McPherson was well represented by Attorney

22

*of V.I. v. Berry*, 631 F.2d 214, 221 (3d Cir. 1980) ("Berry and his counsel may have made a tactical miscalculation by not considering the possibility that Francois would not testify at his own trial, but such a tactical error does not require the court to allow withdrawal of the plea."); *Jones*, 336 F.3d at 252 ("A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty.").

Even if Attorney Cameron's representation were deficient, McPherson did not suffer any prejudice from it. Attorney Cameron and Assistant United States Attorney Robert Schopf ("AUSA Schopf") both represented to the Court that McPherson decided to plead guilty on his own volition. *See* Cameron Decl. ¶¶ 10-11; Timonere Decl. ¶ 4; Tr. of Oral Arg., at 69-70. McPherson led the conversation and set forth the terms of the guilty plea agreement. *See* Cameron Decl. ¶¶ 10-11; Tr. of Oral Arg., at 69-70. The Court acknowledges that McPherson disputes their version of the guilty plea negotiations, but the Court finds Attorney Cameron's and AUSA Schopf's version to be more believable. *See James*, 928 F.3d at 258-59 ("The District Court could properly decide on this record, without abusing its discretion, that [counsel's] version of events was more likely the accurate one.") First, Attorney Cameron and AUSA Schopf are officers of the court and "are expected to be careful and scrupulously honest in their representations to the court." *See Young v. Smith*, 905 F.3d 229, 235 (3d Cir. 2018) (citation omitted). Second, as discussed at length above, McPherson has proven himself to be less than honest.

The Court also bases this conclusion on its own review of the evidence and observations of McPherson during court proceedings. McPherson did not simply watch from the sidelines while

---

Cameron and Attorney Dombroff, and counsel would have been prepared for trial if McPherson did not plead guilty.

Attorney Cameron litigated his case. Indeed, McPherson was an involved participant at every step of the way. *See* Cameron Decl. ¶ 17. McPherson observed Saleem plead guilty to their scheme of defrauding students, lying about the FAA giving McPherson permission to provide flight instruction, and allowing McPherson to continue to fly without legal authorization. *See id.* ¶ 18. McPherson attended the Rule 15 deposition of Inspector Brownell, the inspector to whom McPherson surrendered his flight certificate. *See id.* ¶ 19. At Attorney Cameron's request, the Government provided McPherson with his own copies of all discovery in this case for McPherson to review, which he discussed repeatedly with Attorney Cameron. *See id.* ¶ 24; Tr. of Oral Arg., at 58. McPherson attended the evidentiary hearing and final pretrial conference, where McPherson was an active participant. *See* Cameron Decl. ¶¶ 20-23. He would rifle through his own paperwork as counsel argued before the Court. On several occasions, the Court observed McPherson becoming visibly frustrated by the proceedings and scribbling notes to Attorney Cameron. And McPherson was not shy to the Court. He would ask to speak with Attorney Cameron if he had a question and has even corrected the Court when it misspoke. *See* Tr. of Change of Plea, at 11 (asking to speak with Attorney Cameron and clarifying whether Court meant to say guilty plea agreement or change of plea memorandum).

Even McPherson's own evidence shows he is no doormat. In what McPherson represents is a text message between him and Attorney Cameron on August 7, 2025, McPherson demanded that Attorney Cameron talk him through the process if McPherson does not understand something—in this instance, a Rule 15 deposition—because he is "not agreeing to something" he "do[es] not understand that comes with more legal consequences FOR [HIM]."[12] *See* Mot. to

---

[12] Capitalization reflects what has been capitalized in the text messages provided to the Court. But as the Court observed on the record, these text messages have not been authenticated. *See* Tr. of Oral Arg., at 41 ("So while we do have what appears to be conversations between Mr.

Withdraw Guilty Plea, Ex. N. McPherson asserted that he would "not just say[] yes, sounds like a good idea when [he] do[es] not understand it." *See id.* McPherson went so far as to threaten terminating Attorney Cameron if Attorney Cameron was "unwilling to talk to [McPherson] about it" before demanding Attorney Cameron to "KINDLY explain [his] strategy . . . because [HE WOULD] NOT AGREE to things that do not make sense that decide the course of [HIS] life simply because [ATTORNEY CAMERON WAS] THE TRAIL [sic] ATTORNEY." *See id.*

McPherson has not established that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hafner*, 2026 WL 560227, at *4 (quoting *Lockhart*, 474 U.S. at 59). To the contrary, the Court finds that McPherson would not have accepted his fate without speaking out.

### 2. The Second Superseding Indictment was a "Sea Change" from Earlier Indictments

McPherson asserts that the Second Superseding Indictment was a "sea change" in the Government's theory with respect to the involuntary manslaughter charge. *See* Mot. to Withdraw Guilty Plea, at 1. Specifically, he claims this is the first time the Government detailed "numerous allegations regarding Mr. McPherson's alleged grossly negligent operation of the aircraft on the day of the crash." *See id.* at 9.

Count 3 of the Superseding Indictment alleges that McPherson knew "he was not competent to safely operate that aircraft in that he had two prior accidents and almost a third;" "he failed his reexamination for his pilot's certificate for a lack of demonstrated competence" on or about September 29, 2021; "he voluntarily surrendered his pilot's certificate, acknowledging his lack of competence" on or about October 7,2021; and "he allowed his Temporary Airman

---

McPherson and Attorney Cameron during very specific periods of time, I can't just assume from that that's all the conversations that they had[.]")

25

Certificate to expire" on or about November 8, 2021. *See* Superseding Indictment, at 21. It further alleges that McPherson "acted without malice but with gross negligence in the commission of a lawful act which might produce death . . . , resulting in the aircraft crashing shortly after takeoff and the death of K.K." *Id.* at 21-22. The Superseding Indictment alleges that K.K. would not have died but for McPherson's "intentional and grossly negligent disregard for the safety of K.K., knowing he was not competent to safely fly the aircraft as the pilot-in-command since he had never mastered the skills necessary to safely operate the aircraft." *Id.* at 22.

The allegations in the Second Superseding Indictment are not a "sea change" from these allegations. The Superseding Indictment states McPherson's intentional and gross negligence caused the death of K.K, while the Second Superseding Indictment explains ***how*** he was grossly negligent. *Compare* Superseding Indictment, at 21-22, *with* Second Superseding Indictment, at 21-23.

### 3.   The Guilty Plea was "Tendered in Haste"

McPherson argues that his case "moved rapidly," he felt pressured to plead guilty, and he had insufficient time to consult with Attorney Cameron regarding the guilty plea and to review the change of plea memorandum.[13] *See* Mot. to Withdraw Guilty Plea, at 9-11. The Court is unpersuaded. To the contrary, the Court conducted a Rule 11 colloquy and found—and still finds—that McPherson's guilty plea was fully informed, knowing, and voluntary. *See* Tr. of Change of Plea, at 47. McPherson presents himself as an intelligent individual who speaks out when he has questions or concerns. He is highly educated, having earned a master's degree and paralegal certificate, and even attended some law school. *See id.* at 9-10. And, as previously

---

[13] He also states that Attorney Cameron was unprepared for trial. The Court discussed this argument above.

discussed at length, McPherson does not sit back quietly if he disagrees. McPherson is not shy to push back against his attorney, or even the Court.

The Court's conclusion that McPherson's guilty plea was fully informed, knowing, and voluntary, as opposed to "tendered in haste," is bolstered by McPherson's targeted revisions and the related colloquy. Two are particularly informative. First, when McPherson pushed back on how much he received from ProFlite as compensation and the Court clarified that he seemed "not comfortable agreeing to a fact that might not be quite what the Government is suggesting it is," McPherson responded, "That's all it is. Yes." *See id.* at 39-41. And second, when McPherson asked the Government to delete that he "failed to follow the appropriate flight takeoff pattern which would have provided him an additional area for him to conduct an emergency landing but instead placed him on direct route toward Medivac/Helicopter operations at Lehigh Valley Hospital Cedar Crest," the Government agreed to do so. *See id.* at 44. Collectively, all McPherson's revisions and this dialogue show that: (1) McPherson thoroughly read the change of plea memorandum; (2) McPherson refused to consent to facts he did not agree with; and (2) the Government was willing to adjust the memorandum—even omit entire sentences.

The Court also ensured that McPherson would not feel "rushed" or left without guidance during the change of plea hearing. During the hearing, the Court reminded McPherson at least four times that he could take time to confer with Attorney Cameron. *See id.* at 7-8, 12-13, 20. And he had done so. *See id.* at 11. The Court also told McPherson to take "[a]s long as [he would] like" to review the change of plea memorandum, and the Court recessed during that time. *See id.* at 36-37. The Court gave McPherson no reason to believe that he had to rush through reading the memorandum.

McPherson takes issue with the Government requiring him to execute the guilty plea agreement and the Court scheduling the change of plea hearing for immediately before the trial date, as opposed to cancelling trial altogether. Requiring McPherson to accept the guilty plea agreement within the day does not mean that it was "tendered in haste." Nor is scheduling a change of plea hearing within four days to preserve the ability to proceed with trial if necessary. McPherson had a choice: plead guilty or go to trial. Entering into a plea agreement as a means of delaying trial was not one of them. He made the choice to plead guilty.

### 4.   Absence of Section 3553(a) Factors

Finally, McPherson asserts that the Court never asked if he understood the factors set forth in 18 U.S.C. § 3553(a) factors or whether his attorney discussed those factors with him. *See* Mot. to Withdraw Guilty Plea, at 11-12. This argument is meritless.

As an initial matter, the Court did, in fact, ask McPherson whether he understood that it "must also consider the sentencing factors that are set forth under United States sentencing law," "includ[ing], but . . . not limited to, the nature and the circumstances of the offenses that [McPherson] committed, [McPherson's] personal history and characteristics, the need for the sentence to reflect the seriousness of these offenses, the need to promote respect for the law, and the need to provide just punishment for the offenses." *See* Tr. of Change of Plea Hr'g, at 24-25. These *are* the 3553(a) factors. McPherson stated he understood this. *See id.* at 25. Second, McPherson failed to point to any authority on this issue in his brief or at oral argument.

### c.   Prejudice to the Government

The Court need not evaluate for prejudice to the Government because neither McPherson's assertions of innocence nor the strength of reasons for withdrawal warrant granting the Motion. *See James*, 928 F.3d at 259 (citing *Jones*, 336 F.3d at 255). Nonetheless, the Court finds that the Government would suffer prejudice. The Government brought in experts from across the country,

28

prepared witnesses, and did courtroom walk-throughs. *See* Tr. of Oral Arg., at 67. One critical witness had already been deposed pursuant to Rule 15, but that witness was available at the time scheduled for trial. The victim's family prepared for trial and were told by McPherson that closure of their painful ordeal was at hand. *See id.* at 53. Requiring the Government to regather all these witnesses for a multi-week trial and put the victim's family through trial preparation all over again—after they believed they had closure—would be highly prejudicial.

## V.     CONCLUSION

For the foregoing reasons, McPherson's Motion to Withdraw Guilty Plea is **DENIED**. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge